Eliza Jane Bollinger *v.* John Gallagher and John P. Johns, Appellants.

*Married women—Buying property on credit—Contest with husband's creditors—Evidence.*

A wife may take a good title to property bought on credit, and the addition of her husband's name on the notes given for purchase money will not prevent her from showing that the purchase was made exclusively upon her credit.

On an issue between a married woman and the execution creditors of her husband to determine the ownership of property levied upon as the property of the husband, where the evidence for the wife tends to show that the goods were bought on the credit of the wife at a time when the husband was insolvent; that in payment for them a note was given signed by the wife, her sureties and her husband; that all the parties supposed that the husband's signature was necessary in order that the note should bind the wife, and that the payee of the note as well as the sureties regarded the wife as the real purchaser, it is proper for the court to leave to the jury, to decide as a question of fact, the purpose for which the husband's signature was placed upon the note.

Where the question to whom credit was in fact given is thus submitted to the jury, it is not ground for reversal that the judge wrongfully assumed, and stated to the jury, that by the law of the state where the note

was executed the husband's signature was necessary to make the note binding upon the wife.

*Evidence—Foreign laws—Expert.*

The proper way to prove the statutes of another state or country is by a duly authenticated copy, and the unwritten law should be proved by the decisions of the courts, or by the testimony of a witness who is familiar with it.

Such law cannot be proved by stating to an attorney at law of a foreign state a hypothetical condition of facts and asking him what would be the law of his own state on such facts. Such a question asks for the opinion of the witness as to what the courts would hold, not for his knowledge of what they had held.

In the absence of an interpretation of a foreign statute by the courts of the proper state, the judge must determine its meaning and its operation for himself; and unless he seeks or accepts the services of an amicus curiæ, the opinions of other men are not admissible as evidence at the instance of either party.

Argued May 20, 1895. Appeal, No. 465, Jan. T., 1895, by defendant, from judgment of C. P. York Co., April T., 1889, No. 12, on verdict for plaintiff. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for alleged wrongful levy and sale of a mule, horse, saddle and two bridles, claimed by plaintiff as her property. Before LATIMER, P. J.

This case was formerly before this court, and will be found in 163 Pa. 245.

The property in controversy at one time belonged to George Bollinger, plaintiff's husband. In 1887, under an execution against Bollinger, the property was sold in Maryland, and purchased by his wife, who gave therefor a note signed by herself, by her husband, and by Jacob Bollinger and Thomas J. Gorsuch, her sureties. The note was subsequently paid by plaintiff and her sureties. In February, 1888, Bollinger went to Hanover, Pennsylvania, with the property in controversy, and on his way, with the property in his possession, it was seized by John Gallagher, a constable, one of the defendants, under an attachment at suit of John P. Johns, the other defendant. Gallagher subsequently sold the property at public sale.

When Thomas J. Gorsuch, a witness for plaintiff, was on the stand, plaintiff offered to prove that on October 15, 1887, be-

fore the sale by the trustees, evidence of which has been intro-
duced, Mrs. Bollinger, the plaintiff, asked Thomas J. Gorsuch
and Jacob Bollinger to buy some of the stock then to be sold,
so that she could go into the business of farming, and support
herself and her children ; that they, Gorsuch and Bollinger,
agreed that if she bought things reasonably, and would man-
age the business herself, they would become her sureties for the
price paid ; that they said they were willing to bail her, but
not her husband ; that he had made a failure, and they believed
she could manage better ; that Mr. Gorsuch told Mr. Miller
and Mr. Hoffacker, the trustees, before the sale, of this arrange-
ment ; that at the sale, Mrs. Bollinger, the plaintiff, bought cer-
tain things, including those in suit, and the trustees took her
note for the price of the goods bought, with Mr. Gorsuch and
Jacob Bollinger as bail, which note will be proved and offered
in evidence ; for the purpose of showing that the plaintiff ac-
quired the property upon her own credit, and the business
upon which she proposed to enter with the aid of it ; and that
neither the credit nor the money of her husband entered into
the purchase.

It was objected to by defendants as not evidence in rebuttal ;
if evidence at all, it was evidence for the plaintiff in chief.
And, further, that the declarations and intentions of the plaintiff
and her alleged friends and sureties, as embraced in the offer,
are not evidence against these defendants, being ex parte mat-
ters.    And, further, that the note mentioned in the offer cannot
be construed, and the legal effect of it shown by parol testi-
mony.

The Court : " I think it is res adjudicata.    The Supreme
Court said that we were in error when we rejected the offer
before.    I will admit the offer, and seal a bill of exceptions for
the defendants." [1]

Plaintiff proposed to show by the witness that after Mrs.
Bollinger had purchased the goods at the sale referred to, the
note was drawn up for the price of these goods, including the
price of the black horse bought in the name of Jacob Bollinger,
and that the witness procured George Bollinger to sign the
note in order to make it a legal obligation of his wife, the
plaintiff, in accordance with the Maryland statutes ; for the
purpose of showing all of the circumstances of the sale, and

the giving of the note; and for the purpose of showing that the credit upon which these goods were purchased was exclusively that of Mrs. Bollinger.

Objected to by defendants as leading, and asking the witness to put a construction upon acts and declarations of other parties; altogether an ex parte proceeding; and that it is not admissible to allow the witness to put his construction or that of anybody else upon the transaction.

The Court: "As I understand the offer, it is to prove what this witness did and why he did it. It seems to me that this is within the ruling of the Supreme Court. I will admit the offer."

Exception by the defendants, and bill sealed. [2]

Thomas J. Gorsuch testified in rebuttal as follows:

" I told him that he would have to sign the note in order to hold his wife's property—that we could not hold his wife's property unless he did give his consent,—his consent to the transaction. That is my view of the law in our state, that the husband must join his wife; and that no obligation is binding,. unless he gives his consent to join with her."

Mr. Fisher: " What the witness says about his view of the law is objected to, and we respectfully ask the court to strike it out."

The Court: " We decline to strike it out."

Exceptions by the defendants, and bill sealed. [3]

Similar offers of testimony were made and admitted under objection and exception. [4–10]

Millard F. Taylor, having testified that he had been a practicing lawyer in Maryland for ten years, and was familiar with the law of that state, defendants proposed to prove by him that if a wife of an insolvent debtor in Maryland purchase property while the husband is in insolvent circumstances, giving in payment therefor a promissory note signed by herself and her husband as joint makers, with two sureties, such a purchase is not so exclusively on the wife's credit as to give her a title to the property against her husband's subsisting creditors under the Maryland law; this for the purpose of sustaining the issue on the part of the defendants.

Objected to (by Mr. Stewart) as not evidence for the purpose offered, the witness not having shown such knowledge of

the law of the state of Maryland as to entitle him to testify as an expert; that it is not competent to prove the law different from that written in the statutes of Maryland, offered in evidence by the defendants themselves, that is, to contradict a statute; that the law proposed to be proved is not applicable to the facts in evidence in this case; that the hypothetical question proposed to be put to the witness does not contain all of the elements of this case, as shown by the testimony already introduced.   It is therefore irrelevant and immaterial.

The Court: " I will exclude that offer.  I think it is different from the offer on the trial before.  If the offer would undertake, or offer to show, the ruling of the court and the construction of this statute, or that no case has arisen in which this statute was officially considered, it might be evidence. As the offer stands, and as it is framed, I will exclude it, and seal a bill of exceptions for the defendants." [11]

The court charged in part as follows :

" Now, largely, the question of the ownership of this property by this wife as against her husband's creditors depends upon the legal contractual capacity of a married woman.   That is to say, it depends upon the right and power of a married woman to contract for and obtain the ownership of property. She was then and still is a resident of the state of Maryland. She was a resident of the state of Maryland at the time she purchased this property; and the law of Maryland, which has been offered in evidence to the court, is the law which determines the question of her right to acquire property in the way she did, and on her right to hold it as against her husband's creditors.   And section 19 of article 51 of the Code of Maryland provides that ' The property, real and personal, belonging to a woman at the time of her marriage, and all property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, descent, or in a course of distribution, shall be protected from the debts of the husband, and not in any way liable for the payment thereof ; *provided*, that no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors.'

" [Section 20 then provides a method by which a married woman may become the purchaser of personal property, and

provides that when she buys on credit her husband *must* join with her in the note, and that then her husband may be sued upon that note, and his property as well as hers shall be liable for its payment.] [13]

"Under that act of the General Assembly of the State of Maryland there has been a judicial decision,—at least one,—in a case which in some of its features resembles this, inasmuch as it was a contest between a married woman and her husband's creditors, who undertook to levy and sell property which she claimed belonged to her, on executions against him.  The Maryland court of appeals said in that case,—Erdman v. Rosenthal et al., Maryland Reports, volume 60, page 312,—that 'The husband being in apparent possession and active control of the property and dealing with it as his own, it is incumbent upon the wife, in order to defeat the rights of the creditors of the husband, to establish by clear and undoubted proof a bona fide right and title to the property.  The simple assertion of title as against a husband or his creditors will not do ; there must be clear affirmative proof to show how the property was acquired, and if purchased, that it was paid for by the money, or purchased upon the credit, of the wife exclusively.'

"And this is substantially, I think, in accord with the decisions of the Supreme Court of Pennsylvania upon the same question.

"Now, it is not pretended that when this property was purchased by Mrs. Bollinger she paid for it with her own money. She did not.  The contrary is proven.  It is proven by herself and her witnesses.  It is not pretended that she had any separate estate on which parties would be willing to go her security, for the sureties,—at least one of them,—Mr. Gorsuch, as I remember, testified that they knew that she had no property at the time.  But under the decision that I have just read to you by the court of appeals of Maryland, in Erdman versus Rosenthal, it is said that she may acquire property upon her own credit exclusively, if she does so.  Now, did she acquire this property exclusively upon her own credit?  Her husband was insolvent, admittedly, professedly, and proved so to be. She had no property.  Mr. Gorsuch and Mr. Jacob Bollinger, who became her sureties on that note, said that they did it for her, that they did it practically in faith and reliance upon her ;

and that the husband's credit, although he joined in the note, and joined in it because the Maryland statute required him to join in it in order to make it binding upon her, still they say that the husband's credit did not enter into the inducements that led them to go upon this note.

" The credibility of every witness is for the jury. The court cannot say as a matter of law that because the evidence is all one way, therefore the jury must find all facts as the witnesses stated them. [There is nothing in this case to contradict the testimony on that subject, or Mr. Bollinger on that subject. The jury will say whether these witnesses, who are apparently entirely disinterested, have testified to the truth. If they have ; and if they upon the credit and faith and reliance which they had in Mrs. Bollinger went upon that note,—the note at the judicial sale,—as her surety, looking to her for payment, and not to George Bollinger, then I say to you that under all the decisions, and under a true and proper interpretation of the statute law of Maryland which I read to you, she acquired by the purchase, on credit though it was, and on a note joined in by her husband though it was ; still, if it was her credit that induced these sureties to become sureties, and not her husband's credit in any degree, then she acquired a title to the property that she can hold against her husband's contemporary creditors. And that is a question for you to determine. And that question depends upon the degree of credence which you give to Gorsuch and Bollinger, and to Mrs. Bollinger and her husband, George Bollinger. As I said before, there is nothing in the case to contradict them.] [14]

" If you do not believe that testimony ; if you believe this was a scheme concocted to cover up the property of the husband from those other creditors to whom he was indebted at that time, then I say to you this statute, which was enacted for the protection of married women, must not be made the means of enabling the husband to cover up with his wife's mantle his own property, and prevent his creditors from seizing it.

" [Now, then, if you determine that question, as I have said before, in favor of the defendants,—if you disbelieve Gorsuch and Bollinger, as well as Mrs. Bollinger and her husband, that this property was purchased by her on her own credit, or that

these men became the sureties on her credit, and upon their faith and reliance upon her, or any credit in which the husband did not enter,—if you disbelieve that testimony, and if you believe that this was a scheme to cover up the husband's property to prevent the creditors from getting it, then the wife did not by that purchase acquire the ownership of the personal property for which this suit was brought.] [15]

"If, on the contrary, you believe the testimony of Mr. Gorsuch and Mr. Jacob Bollinger, and Mrs. Bollinger and George Bollinger to the effect that she bought in the way she says she did, and that these men went upon the note and subsequently loaned her the money to pay that note, and exclusively relied upon her credit, and not upon the credit and faith of the husband, then the next question is for you to determine the amount of damages which she has suffered by what was clearly a seizure from her husband, and a detention and sale of the property by these defendants."

Verdict and judgment for plaintiff for $450. Defendants appealed.

*Errors assigned* were, (1–11) rulings on evidence, quoting the bill of exceptions; (12–15) instructions, quoting them.

*H. L. Fisher, C. E. Ehrehart* and *G. G. Fisher* with him, for appellants.

*Henry C. Niles, W. F. Bay Stewart* and *George E. Neff* with him, for appellee.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895:

We agree with the learned counsel for the appellants in much of his criticism upon the manner in which this case was tried in the court below.   The right of Mrs. Bollinger to recover did not depend in any sense upon the weakness of the title of the defendants, but upon the legal sufficiency of her own.   It was evident from her case in chief that she was a married woman, claiming property that had belonged to her husband, and that her contest was with her husband's execution creditors. It was indispensably necessary for her to show a purchase of the property by herself, valid in character, made exclusively

upon her own money or credit, and followed by an open exercise
of acts of ownership over it.   Without having established by
competent evidence every requisite necessary to invest her with
a title, good against her husband's execution creditors, she was
without any right to recover, and a judgment of nonsuit should
have been entered against her.   But the learned judge before
whom the trial was conducted refused a motion to enter a com-
pulsory nonsuit and the defendants entered upon their defense.
Before the trial closed the whole case of the plaintiff was before
the court and jury and was passed upon by them.   The question
of order is therefore now of minor importance, and we proceed
to consider the case as a whole.   Two important questions
were raised by the evidence.   The first was a question of fact
for the jury, viz, was Mrs.Bollinger's purchase made wholly upon
the credit of herself and her friends who became her sureties,
and was the husband's name as one of the makers of the note,
given by her, treated by all the parties as a matter of form to
be observed in order to make the note valid as against herself?

The other was a question of law for the court, viz, how could
Mrs. Bollinger, a married woman, acquire a valid title to prop-
erty as against her husband's creditors under the laws of Mary-
land, the state in which she was living when the alleged
acquisition took place?

The second question was answered in the language of sec. 19
of the Code of Maryland, 1878.   A married woman may acquire
a valid title by purchase, and when the purchase has been made
in good faith with her own separate money, or upon her own
credit, she may hold the property so purchased for her separate
use.   The case then went to the jury upon the question of fact
stated above.   The title set up was by purchase.   The purchase
was made by the plaintiff upon credit.   The question of fact
narrowed itself therefore to whether the credit was given to
Mrs. Bollinger and her sureties, or was in part at least given to
her husband.   The security given was a note.   The husband's
name appeared on this note and, unexplained, justified the con-
clusion that his credit entered into the transaction.   It became
necessary therefore to account for the fact that his name
appeared upon the note, which it is alleged was accepted as
payment wholly upon the credit of Mrs. Bollinger and her sure-
ties.   For this purpose evidence was given by the testimony

of Mrs. Bollinger, her husband, Gorsuch, and one or two other witnesses, tending to show the following facts: (*a*) That the husband was insolvent and had been stripped of all his property by a sheriff's sale; (*b*) that the parties supposed his signature to be necessary in order that the note should bind his wife; (*c*) that the person to whom the note was payable, and the persons who were to execute it as sureties, regarded and treated Mrs. Bollinger as the debtor, or the person on whose credit and for whose benefit the sale was made, and who was the sole and separate purchaser.

Upon this evidence the learned judge said to the jury that if it was believed, and the jury should find from it that the credit was given to Mrs. Bollinger by the vendees of the property, and by the sureties who became liable for the payment of the note, and not to her husband, "then under all the decisions and under a true and proper interpretation of the statute law of Maryland which I read to you, she acquired by the purchase, on credit though it was, and on a note joined in by her husband though it was; still if it was her credit that induced these sureties to become sureties, and not her husband's credit to any degree, then she acquired a title to the property that she can hold against her husband's contemporary creditors. And that is a question for you to determine." We think this was a correct submission of the question on which the case turned. It is true the learned judge told the jury that the joining of the husband was necessary in order to make the note of his wife a binding obligation upon her. It is also true that no authority in the way of express enactment, or exposition of the Code of 1878 by the Maryland courts, is cited by the learned judge or brought to our attention by the counsel for the appellee that lays down the rule upon this subject in the terms in which it was stated by the court below.

But the jury was not directed to disregard the joinder of the husband because the law required it of him in aid of his wife's separate undertaking, but the purpose and effect of his joinder were left for the jury to determine under the evidence relating to the transaction; with the direction that if they believed this was not a good faith purchase by the wife upon her separate credit but a plan to cover up the property and keep it from the husband's creditors then " this statute which was enacted for the

protection of married women must not be made the means of
enabling the husband to cover up with his wife's mantle his own
property and prevent his creditors from seizing it." In other
words the joinder by the husband with his wife in the execution
of the note was not disposed of as matter of law by a binding
direction resting on the assumed law of Maryland, but left to
be disposed of by the jury on the evidence as a question of fact.

One other subject requires attention. It is brought to our
notice by the eleventh assignment of error. Millard F. Taylor,
a member of the Baltimore bar, was called as a witness and testi-
fied that he was familiar with the law of Maryland relating to
husband and wife. He was not then examined as to what the
law was held to be by the courts of that state on any subject
relating to husband and wife, but was informed by counsel that
it was his purpose to put a hypothetical question to him. Before
this question was framed an offer was required and it was accord-
ingly reduced to form thus : " Defendants propose to prove by
the witness that if a wife of an insolvent debtor in Maryland who
purchased property while the husband was in insolvent circum-
stances, giving in payment therefor her promissory note signed
by herself and her husband as joint makers, and two sureties,
such a purchase would not be so exclusively on the wife's
credit as to give title to the property as against the husband's
creditors under the Maryland law."

It should be noticed that this is not an offer to prove what
the law of Maryland is as held by its courts, but an offer to
show by the witness what, upon the facts assumed in the hypo-
thetical question, his own conclusion is as to what would be held
by the courts of that state. The question reached after the opin-
ion of the witness as to what the courts would hold, not after his
knowledge of what they had held. The statutes of another
state or country may be proved by a properly authenticated copy.
The unwritten law of such state or country may be shown
by the decisions of the courts or by the testimony of a witness
who is familiar with it: 1 Greenleaf on Ev. 488; Chesapeake
Ins. Co. v. Starke, 6 Cranch, 273 ; but such evidence is to the
court, and for its information. The jury must take the law
from the court. The law of another state upon a subject coming
under notice in the trial of a cause will be presumed to be the
same as the law of this state upon the same subject. It is incum-

bent upon him who alleges that it is different to show just what it is to the court, who will judge of the sufficiency of the evidence, and its effect, and instruct the jury thereon. Ordinarily expert testimony is for the jury and is intended to aid them in determining a question of fact. They are not bound by it, but may exercise their own judgment in deciding the question in regard to which experts have testified, 7 Am. & Eng. Ency. of Law, 516, and may in doing so disregard the expert testimony. But the proof of the laws of another state is not made by experts as such. It is made by the best evidence which the nature of the law in question admits of. A statute admits of exact proof by a copy and for this reason it cannot be shown by parol. The expositions of that statute by the courts are not necessarily evidenced by any sort of documentary matter and for this reason may be proved by one who is familiar with them; but a conjecture, or a professional opinion, as to what the law would be held to be upon certain assumed facts, while it might be desirable for the guidance of a client, and be within the appropriate province of an attorney at law to give, is not admissible as proof of what the law actually is. With the statute before him the judge in the absence of an interpretation by the courts of the proper state must make his own. He must determine its meaning and its operation for himself, and unless he seeks or accepts the services of an amicus curiæ, the opinions of other men are not admissible as evidence at the instance of either party. It was not error therefore to reject the offer resting on the hypothetical question.

Upon a consideration of the whole case the assignments of error are overruled and the judgment is affirmed.

MITCHELL, J., dissents.