# Commonwealth *v.* Pioso.

*Criminal law—Perjury—Altering figures in promissory note.*

The figures in a promissory note or bill of exchange constitute a part of the note or bill, and an illegal alteration of them is forgery.

*Criminal law—Forgery—Evidence—Equitable rule as to reforming written instrument.*

On an indictment for forgery where the charge is the alteration of the figures in a promissory note, the equitable rule does not apply, which requires the testimony of at least one additional witness or corroborating facts which amount thereto to support the testimony of the party interested to reform an instrument, and that such testimony should be clear, precise and indubitable.

The fact that a promissory note was fraudulently altered is sufficiently established by the testimony of the maker of the note supported by that of the indorser who testified that the payee expressly admitted to him that he had raised the note, and by the testimony of an expert that the alteration was made with a different ink.

*Criminal law—Forgery—Evidence.*

On the trial of an indictment for forgery where the charge is the alteration of a promissory note, testimony relating to payment of a portion of the proceeds of the note by the defendant who was the payee to the indorser, and the latter's alleged declaration as to the purpose for which he wished to hold the note after he paid it, is wholly immaterial.

In such a case it is not improper to ask the maker of the note who had testified as to certain conversations which he had with sons of the defendant with regard to the note and its payment, whether he had not heard at the time of these conversations that the figures in the note had been raised. The purpose of the question was not to establish the fact of the alteration, but what was in mind at the time of the conversations and the inducing cause thereto.

*Evidence—Expert witness—Competency of witness—Forgery—Difference in inks.*

The competency of an expert in inks in a forgery case, is establishsd where the witness testifies that he had been called in court as a witness a number of times in regard to the color of inks, and that he had been practically connected with their use for many years.

Argued March 12, 1901.   Appeal, No. 25, Oct. T., 1901, by defendant, from judgment of Q. S. Lancaster Co., Aug. T., 1899, No. 4, on verdict of guilty in case of Commonwealth v. Moses Pioso.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Indictment for forgery.   Before LANDIS, J.

At the trial it appeared that the defendant was charged with altering the figures " 55 " to " 355 " in a promissory note.   The note was made by A. L. Brubaker to the order of M. Pioso & Sons, and indorsed by them and Uriah Bitzer.   The material facts of the case appear by the opinion of the Superior Court.

Defendant offered to prove by Gabriel Pioso, that $300 of this note was paid to Mr. Bitzer.   Objected to by the commonwealth.   Dissallowed.   Defendant excepts.   Bill of exceptions signed, sealed and filed for the defendant. [6]

Abram Pioso, a witness called by the defendant, was asked this question: " Q. Now Mr. Pioso, state whether or not any money was paid to Mr. Bitzer.   A. Yes, sir, we paid Bitzer $300 over a year ago."

Objected to by the commonwealth.

The Court: Do not answer the question until the court tells you to.   Disallowed.   Last answer ordered to be stricken out by the court.   Defendant excepts.   Bill of exceptions signed, sealed and filed for the defendant. [7]

Defendant offered to prove by the witness, Gabriel Pioso, that John Hertzler, cashier or treasurer of the Lancaster Trust Company, said to witness, or in his presence, that Bitzer wanted to hold the note in suit, as a sharp bit upon his father in their business transactions.   Objected to by the commonwealth.   Disallowed.   Defendant excepts.   Bill of exceptions signed, sealed and filed for the defendant. [8]

A. L. Brubaker, a witness called by the commonwealth in rebuttal, was asked: " Q. Had you or not, when you were talking that way, heard that the note had been raised from $55.00 to $355 ? "

Objected to by the defendant.   Allowed.   Defendant excepts.   Bill of exceptions signed, sealed and filed for the defendant. [9]

" A. The time I was there the last time ?   Q. Yes, sir.   A. I knowed it that time, yes.   The time I was there last."

Joseph D. Pyott, a witness called by the commonwealth, was asked the following question: " Q. Now, with the use of those glasses again, look at the figure ' 3 ' and the figures ' 55 ' for comparison, and state whether or not they are written in ink of the same color? "

Objected to by the defendant. Allowed. Defendant excepts. Bill of exceptions signed, sealed and filed for the defendant. [10]

" A. Whether these were written with the same ink? Is that what I understand you? Q. Whether the figure ' 3 ' and the two ' 5's ' are written in ink of the same color? A. The two ' 5's ' have been written with an ink which, in drying, turns brown. The ' 3 ' has been blotted, but all the same, it was written with an ink that turns black. Q. Now, look at the figures '55' and compare them with the signature, ' A. L. Brubaker,' and state whether or not the two ' 5's ' are written in the same ink as the name ' A. L. Brubaker.' "

Objected to by the defendant. Allowed. Defendant excepts. Bill of exceptions signed, sealed and filed for the defendant. [11]

" A. The only place in this signature that offers any ground for comparison is the ' B ' in ' Brubaker.' That is the same color as the ' 5's,' apparently. Q. Now, look at the figure ' 3 ' in the ' 355,' and at the ink used in filling up the note, particularly at the largest word, the word in ' Three hundred ' the ' T ' and see whether or not the ink in the ' 3 ' is the same color as the ink used in filling up the body of the note."

Objected to by the defendant. Allowed. Defendant excepts. Bill of exceptions signed, sealed and filed for the defendant. [12]

" A. The ' 3 ' and the ' L ' here in ' Lancaster ' in the body and the ' T ' in ' Trust,' seems to be written in ink of the same color. I must specify those letters, because the others are fine letters and I cannot tell, but where the stroke is broad, I can see how it dried out."

The court charged in part as follows:

The evidence of the commonwealth shows that A. L. Brubaker and the defendant were dealing together in horses, and, in the course of their dealings, a note, dated August 23, 1898, for $55.00, was given by Brubaker to M. Pioso & Sons. This note was for sixty days, and came due on October 22, 1898. [Brubaker tells you that he had not kept a memorandum of the time of its maturity, and that, as he happened to pass Pioso's place, he was called in, or went in, and they spoke about the

renewal of this note. He tells you he signed a new note in blank, which was to be filled up for the $55.00, and that Pioso was authorized to get some one to fill it up for that amount, as Pioso himself could not write, and he says he knew that fact;] [5] and Pioso, at the time, called his attention to the danger of signing a note in blank, and he, Pioso, then put on the corner the figures "55." This note was actually filled up for $355; is dated October 5, 1898; made payable to M. Pioso & Sons, and indorsed by them and Uriah Bitzer, and was purchased by the Lancaster Trust Company. Brubaker also tells you that he never authorized Pioso to fill up the note for $355. Some time after this, he asked for his old note, and Pioso informed him that it was in his other coat; but, shortly after, the note was given by Pioso to him, and is presented here before you.

In some way or other, Brubaker says, he ascertained that there was a note of $355 in the Lancaster Trust Company, and he thereupon saw Pioso and spoke to him concerning it. He says that Pioso said to him: "Don't say anything to Bitzer or the boys, I will lift it to-day;" but he did not lift it. He also had a conversation with the Pioso boys the Tuesday before the note came due. He says: "I met Gabe; I said: 'What are you going to do with it?' He said: 'You don't owe it, and we are going to pay it.'" It appears that Mr. Davis, counsel for the Piosos, went with Brubaker to the trust company to lift the note on the Saturday preceding the Monday on which the note fell due, but the trust company refused to give it to him, stating that Uriah Bitzer had instructed them not to do so. The note was protested at maturity, and was subsequently lifted by Uriah Bitzer, the indorser. Brubaker says he did not pay the discount on the renewal, nor the stamps, and that Pioso had said to him the discount was only fifty cents and that he would pay it, and Pioso corroborates him in that respect. He signed no other note except the one that was to be filled up for $55.00, he alleges.

The defendant, on his part, admits that there was an original note for $55.00, which became due as has been stated, and that Brubaker came to his (Pioso's) place concerning the renewal of that note. It is alleged by the defendant that he, at that time, told Brubaker that he wanted $300 for himself, and, af-

ter having said something of the danger of making a note in
blank, he put the figures "355" on the corner, and not "55,"
as has been stated to you by Mr. Brubaker; and that, sub-
sequently, by the defendant's direction, the note was filled in
by his (Pioso's) daughter for $355, and was negotiated, as has
been stated to you. That, of the $355, $300 was to be for
Pioso's use, and $55.00 was to be used in lifting the $55.00 note,
and that this was done, and it was agreed that, when the note
became due, Pioso was to pay $300 on it, and Brubaker the
$55.00. He says Brubaker understood the whole matter, and
said that he would sign the note, as Pioso had done lots of
favors for him. You will also remember the testimony of Harry
White, that he heard Brubaker say something about a receipt
for $300 in the beginning of October, 1898; and, also, that of
the Pioso boys, that Brubaker came to them before the note
became due, and a number of times stated he had signed a
note for $355, of which $300 was for their father and $55.00
for himself, and that they then said that, if that were true,
they would pay the note, and that, in pursuance of this ar-
rangement, they went to the bank with Mr. Davis, as has been
before stated.

You have listened attentively to the testimony in this case.
You will take it all into consideration in arriving at your ver-
dict. The credibility of all the witnesses is for you. You must
determine who is telling the truth. If the defendant's state-
ment of the understanding between Brubaker and himself is
correct, that the note was only filled up for the amount which
it was agreed it should be filled up for, in accordance with the
figures placed upon the note in Brubaker's presence, then the
defendant would not be guilty of the crime charged in the in-
dictment. But, if this note was prepared to renew the $55.00
note, and Mr. Brubaker's statement is correct, that the figures
"55" were put by Pioso on the corner, and that the writing
was to be filled in to correspond to those figures, and that
Pioso subsequently changed the figures, or had some one to do
it for him, to "355," and had the writing of $355 inserted by
his daughter in the note, then the defendant would be guilty
in manner and form as he stands indicted. Nor would it make
any difference that, before the maturity of the note, his counsel
went to the bank to lift the note. If a man forges a note, he

cannot escape the responsibility for his crime by subsequently lifting it. The whole question reverts back to the original making of the note and his conduct at that time, and, if he forged the note, and it was discounted, as has been stated, any subsequent actions, when it is discovered, cannot relieve him from the consequences of his act. [Did he, therefore, in violation of his authority, fill in the blank note, or cause it to be filled in, for a larger sum than it was understood it should be filled in for, and change the figures from " 55 " to " 355 "? If he did, you may find him guilty in manner and form as he stands indicted. If he did not, and his story is correct, your verdict should be one of not guilty.] [4]

The counsel for the defendant has submitted certain points, which it is our duty to read and answer in your presence.

1. Under the evidence submitted, the verdict should be in favor of the defendant. *Answer:* This point is refused. The jury must pass upon the guilt or innocence of the defendant. [1]

2. The witness for the commonwealth, A. L. Brubaker, having testified that he signed the note in blank and did not tell defendant what amount it should be filled to, it was, therefore, not a forgery. *Answer:* This point is refused. We have already given what we believe to be the law in the case. [2]

3. The figures " 355 " are not a material part of the note in suit, and an addition of the figure " 3 " to the figures " 55 " do not constitute a forgery. *Answer:* If the note was to be filled up for $55.00, and, contrary to the meaning and intention of the parties, it was filled up for $355, and the figures were changed by the addition of the figure " 3," the defendant may be convicted in manner and form as he. stands indicted. This fact with all the other facts of the act, is for the jury. [3]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–5) above instructions, quoting them. (6–12) Rulings on evidence, quoting the bill of exceptions.

*B. F. Davis*, with him *H. M. North*, for appellant.—The assumption that the defendant, Pioso, exceeded his authority, by filling up the note for a larger sum than directed, is not warranted by the testimony. There is absolutely no evidence of

any conversation stating that as a fact: Wessell & Co. v. Glenn, 108 Pa. 104; Spencer v. Colt, 89 Pa. 314; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Hepler v. Mount Carmel Savings Bank, 97 Pa. 420; Wiley v. Moor, 17 S. & R. 438; Howie v. Lewis, 14 Pa. Superior Ct. 232.

The figures were no part of the note and therefore their alteration could not be the forgery of a promissory note for which the defendant was indicted: Smith v. Smith, 1 Rhode Island, 398; Woolfolk v. Bank of America, 10 Bush. (Ky.) 504; 1 Parsons on Notes and Bills, 109; 1 Randolph on Commercial Paper, sec. 105; Putnam v. Sullivan, 4 Mass. 45; Abbott v. Rose, 62 Maine, 194; Roberts v. Adams, 8 Port. (Ala.) 297; Herbert v. Huie, 1 Ala. 18; Huntington v. Branch Bank of Mobile, 3 Ala. 186; Decatur Bank v. Spence, 9 Ala. 800; Fullerton v. Sturges, 4 Ohio, 529.

No chancellor would reform a writing upon such testimony as is here presented. The rule is that a chancellor invariably refuses to decree on the uncorroborated testimony of a single witness: Brawdy v. Brawdy, 7 Pa. 157; Juniata Building & Loan Assn. v. Hetzel, 103 Pa. 507; Jackson v. Payne, 114 Pa. 67.

Pyott did not show that he was an expert on inks or colors and therefore was not competent: Lineoski v. Susquehanna Coal Co., 157 Pa. 153; Hartman v. Keystone Ins. Co., 21 Pa. 466.

*D. McMullen* and *W. U. Hensel,* with him *W. T. Brown,* district attorney, for appellee.—When an agent has authority to fill with a particular sum a blank in a paper signed by his principal, it is forgery to fill the blank with a larger sum: 1 Wharton's Criminal Law, 612, sec. 671.

OPINION BY BEAVER, J., April 16, 1901:

The verdict of the jury finds the facts of this case against the testimony and the contention of the defendant. Briefly summarized, they are as follows: Brubaker, being indebted to the defendant, gave him his promissory note for the sum of $55.00. Some time before its maturity, it was proposed to renew it. Brubaker signed a blank note but, before it passed from his possession and into the control of the defendant, the

defendant voluntarily placed the figures 55, so as to prevent, as he said, the raising of the note to $355 or $455. With the note in this condition, the defendant was authorized to fill the blanks for the amount indicated in figures. The figure 3 was added before the figures 55, and the note was filled up by the defendant's daughter for the sum of $355. It was subsequently indorsed by Bitner and the proceeds placed to the credit of the defendant in the Lancaster Trust Company. The court below held that in law the altering of the figures and the filling of the note for the larger sum constituted the crime of forgery.

Twelve specifications of error are presented for our consideration which may be disposed of under six separate propositions, as argued by the appellant:

1. It is seriously contended that, assuming the facts as found by the jury, they did not constitute in law the crime of forgery. To substantiate this proposition, it is assumed that the figures in a promissory note or bill of exchange do not constitute a part of the note or bill, and that, therefore, to alter them is not forgery. As authority for this assumption, Commonwealth v. Bailey, 1 Mass. 62, and Commonwealth v. Stevens, 1 Mass. 203, are cited. These cases, however, both related to bank bills, in which it was held that " the number of a bank bill and the figures in its margin marking its amount are not parts of the bill and need not be set out in the indictment." These cases were quoted approvingly in Commonwealth v. Searle, 2 Binney, 332, in which it was alleged that the ornamental devices upon a bank bill are parts which it is material to set out in an indictment. All that the Supreme Court held in that case was " that it was not necessary to set forth the ornamental parts of the bill—the devices or mottoes." It will scarcely be doubted, however, that, if a counterfeit bill, containing the same number as a genuine were uttered, and the genuine bill, in order to avoid a conflict with the counterfeit, had its number changed or altered, such an alteration would be a forgery. In that case the number would become a material part of the bill. In a very important sense the figures in a promissory note, bill of exchange or check are part of it. They serve to avoid mistakes in the body of the instrument. Whilst it is true and has generally been held that where there is a variance between the amount written in the body and the

amount noted in figures, the written part, in the absence of fraud, will fix the liability of the maker or other party liable therefor, nevertheless the amount in figures, if varying from the amount written in the body of the instrument, serves to put takers upon inquiry. If the note in question had gone to the indorser, with the figures 55 and the words " three hundred and fifty-five " in the body of the note, it can scarcely be conceived, if he is a prudent man, that he would have indorsed the note, without making inquiry of the maker ; and so as to the bank purchasing the paper. Such a variance would have raised the inquiry as to which amount was that for which the maker was to be held responsible, and inquiry from him would have at once disclosed the fraud. The case of Rex v. Hart, 32 Eng. C. L. R. 672 (7 Car. & Payne, 652), cited by the court below and the appellant as from 1 Moody, 486, is an entirely pertinent authority. In that case the defendant secured the acceptance of a blank bill of exchange with the figures 200 thereon written, so as to limit thereby the amount to be entered in the body of the bill. These figures were removed by an acid and the figures, as well as the words in the body of the bill, made to read 500. The case was originally tried before Mr. Justice LITTLEDALE and Mr. Baron BOLLAND, but afterwards before a full bench, Lord DENMAN presiding. The contention of the defendant in that case, as in this, was that, whilst a fraud had been perpetrated, it was not a forgery. The conviction, all the judges concurring, was sustained. The authority of this case, based as it is upon sound reason, has not been shaken.

2. The appellant claims, however, that there was not sufficient evidence, even if the facts would in law constitute forgery, to submit the question of the fraudulent alteration to the jury. His argument in support of this proposition is that, inasmuch as it requires the testimony of at least one additional witness, or corroborating facts which amount thereto, to support the testimony of the party interested, to reform an instrument, and that such testimony should be clear, precise and indubitable, the testimony necessary to convict in a criminal case should be at least equal both as to quantity and quality to what is required in civil cases. The answer to this proposition is twofold: (*a*) The rule does not apply in criminal cases for very

obvious reasons. The commonwealth is the party interested and the witnesses in her behalf are not supposed to have a personal interest in the sense in which that term is used in civil cases. Motive, bias or prejudice, which may be supposed to influence a witness, are weighed by the jury and enter into their consideration in reaching a conclusion. The testimony of one witness, if believed by the jury, can convict a defendant in such a case as this. (*b*) As a matter of fact, the testimony in the case fully meets the requirements of the rule. In support of the testimony of the maker of the note is that of the indorser who testifies that the defendant expressly admitted to him that he had raised the note ; and, in addition thereto, there is the testimony of the expert in regard to the ink employed, which, if believed, was practically conclusive of the question. The objections to the testimony of Bitner and of the expert, which are raised by other assignments of error, will be disposed of in their proper place. This is all that is necessary to be said upon this subject.

3. In the fifth specification of error it is alleged that the court misstated the evidence in regard to Brubaker's call at the office of the defendant, when the original note was renewed. We can see no practical divergence between what was said by the court and what is contained in the testimony of Brubaker. The jury was certainly not misled nor was the defendant in any way injured by what is complained of.

4. The sixth, seventh and eighth specifications relate to the relations between the defendant and his indorser, who was the prosecutor in this case, the court below sustaining the objections of the commonwealth to testimony relating to the payment of a portion of the proceeds of the note to the indorser and his alleged declarations as to the purpose for which he wished to hold the note after he paid it. This was wholly immaterial. The commonwealth is in no way interested in the fact of the payment to Bitner nor the object which he had in view in paying the note, as indorser, and holding it. The testimony was properly excluded.

5. Brubaker, the maker of the note, being called by the commonwealth in rebuttal, was asked as to certain conversations which he had with the sons of the defendant in regard to the note and its payment. As explaining his attitude and inquiries

upon this subject, he was asked whether or not he had heard at the time that the note had been raised from $55.00. This was not hearsay evidence and was not introduced for the purpose of establishing the fact of the alteration, but of showing what was in mind at the time of his conversations with the young men and the inducing cause thereto. The answer, however, was not that he had heard it but that he knew at the time it was altered, so that it was entirely unobjectionable from every point of view.

6. The tenth, eleventh and twelfth specifications of error relate to the competency of Pyott, a witness called by the commonwealth as an expert in regard to inks. His competency depended upon facts which were stated by him and which the court deemed sufficient to warrant his testifying as an expert. These facts clearly established his competency. He not only testified that he had been called in court as a witness a number of times in regard to the colors of inks but that he had been practically connected with their use for many years. His own opinion as to his competency as an expert had little to do with the question, although that was not disqualifying, when fairly interpreted. The court was to determine his competency from facts and, in such a case, it is the opinion of the court and not that of the witness which governs.

The testimony in the case justified the verdict of the jury. Nothing was withheld from their consideration and nothing improperly submitted therefor which would have tended to change the result. Upon the facts as found by the jury, the defendant was in law guilty of the crime charged. The specifications of error are all overruled. Judgment affirmed and record remitted to the court below, to the end that its sentence may be carried into effect.