Hatfield et al. *v.* Sovereign Camp of the Woodmen
of the World, Appellant.

Argued October 8, 1937.  Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Arthur T. Porteous,* for appellant.

*Abraham Wernick,* for appellees.

OPINION BY KELLER, P. J., January 27, 1938:

This was an action of assumpsit, on a self-styled 'beneficiary certificate,' against a fraternal beneficial

association, incorporated under the laws of Nebraska, to recover a death benefit of $1,000 payable on the death of the member, Harry Hatfield.

The jury rendered a verdict in favor of the plaintiffs on which judgment was duly entered. Defendant appealed. The judgment will be affirmed.

Harry Hatfield applied for membership "by adoption" in Keystone Camp No. 606 of Woodmen of the World on March 25, 1935, and at the same time made application for a beneficiary certificate on the Twenty-Payment Life plan, with double indemnity in case of accidental death, to be issued by the Sovereign Camp, in the sum of $1,000. He was examined by the Camp physician and passed as a "first-class" risk. The certificate was issued on April 16, 1935 and accepted by the applicant as of that date, with a statement warranting "that I am in good health at this time, and have not been sick or injured since the date of my application." He died on July 23, 1935. The physician in charge certified that the cause of Hatfield's death was pulmonary tuberculosis, and that he had attended him from July 5, 1935, when he was admitted to the Philadelphia General Hospital, until his death, but had not "treated or advised" him prior thereto.

Defendant, on October 15, 1935, rejected the claim of the beneficiaries for payment of the death benefit on the ground that "false warranties and material misrepresentations were made in the application therefor." This action was brought on September 16, 1936.

At the trial the defendant presented two grounds of defense, each requiring — it contended — binding instructions in its favor:

(1) That the warranty in the application made by Hatfield on March 25, 1935, that he was in sound bodily health was false; and his warranty in the acceptance of the certificate on April 16, 1935 that he was then in good health, was likewise false.

(2) That under the by-laws of the association the action was brought too late.

We will consider them in that order.

(1) It is not contended that the applicant made any false answers in the application as respects not having consulted or been attended by a physician for any disease or injury, or having undergone any surgical operation; or that ·he had never been under observation, care or treatment in any hospital, sanatorium, asylum or similar institution (Personal history, answers 11 and 13). The alleged breaches of warranty relied upon relate solely to his sound or good health at the times he was examined by the camp physician and accepted the certificate, respectively. And the alleged falsity of these warranties rests not on the testimony of any physician who had examined him prior to, or between, March 25, 1935 and April 16, 1935, but on the opinions of physicians formed afterwards from an examination of his condition some weeks or months later. The applicant had every appearance of good health. He had not consulted or been treated by a physician for very many years. The physician who examined him for the defendant corporation found and pronounced him a first-class risk. It does not appear in the record that he had been treated by any doctor until April 21, 1935, when the family physician found him suffering from influenza, with bronchitis and laryngitis. This physician, called as a witness by the *defendant,* stated that there was an epidemic of influenza in Philadelphia at that time. He also testified that he had then made a thorough examination of the patient — had gone over his lungs, chest, heart, throat, etc. — and found no evidence of pulmonary tuberculosis. That he was suffering on July 5, 1935, when treated by a physician, with pulmonary tuberculosis was not conclusive that his health was not sound on March 25, or April 16. He was a truck driver, whose duties took him out in all

sorts of weather, and it is not beyond the realm of possibility that a man of sound health might under certain conditions become the victim of 'galloping consumption,' as it is sometimes popularly called. See *McBride v. Sun Life Ins. Co.*, 90 Pa. Superior Ct. 35, 39; *South Side Trust Co. v. Eureka Life Ins. Co.*, 74 Pa. Superior Ct. 566, 570.

The question whether or not an applicant for insurance was in sound health when examined by the insurer's physician, and when the policy was delivered, is ordinarily a question of fact for the jury: *Horne v. John Hancock Mut. Life Ins. Co.*, 53 Pa. Superior Ct. 330; *Clark v. Metropolitan Life Ins. Co.*, 62 Pa. Superior Ct. 192, 196; *Barnes v. Mut. Life Assn.*, 191 Pa. 618, 43 A. 341; *South Side Trust Co. v. Eureka Life Ins. Co.*, supra. p. 571; *Borgon v. John Hancock Mut. Life Ins. Co.*, 99 Pa. Superior Ct. 377, 382. And where the evidence is conflicting or the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court's discretionary power to award a new trial: *Evans v. Penn Mut. Life Ins. Co.*, 322 Pa. 547, 560, 186 A. 133. In *Prudential Ins. Co., v. Kudoba*, 323 Pa. 30, 186 A. 793, the Supreme Court held that where the insurer makes an examination of the applicant, as was done here, the 'sound-health' clause in the policy has no application to the health of the insured at the time of examination and operates only to the extent of protecting the company against a material change in the physical condition of the applicant between the time of the examination and the issuance of the policy. Appellant recognizes the general rule as stated above, but contends that this case falls without it and was not for the jury, because on May 8, 1935, X-ray photographs were taken of Hatfield's thorax and lungs at St. Luke's Hospital which, as read by physicians showed evidence of ad-

vanced and extensive pulmonary tuberculosis. But these X-ray photographs were taken six weeks after his examination by the defendant's doctor and three weeks after the acceptance of the certificate, and the physicians' conclusions from them as to the patient's prior condition were only matters of opinion and for the jury. In *McBride v. Sun Life Ins. Co.*, supra, pp. '39 and 40, a physician, an expert in cases of tuberculosis, testified: "Your Honor, there is no picture of tuberculosis. There is no X-ray picture of any such thing ...... You cannot have a picture of positive tuberculosis of the lungs, depending upon the picture itself, unless it is strengthened by clinical symptoms"; and a physician experienced in the diagnosis and treatment of tuberculosis, called by the plaintiffs as a witness in this case, said that the X-ray was not the most important part of the examination—that the important part was the physical examination and the sputum examination. We said in *Breslin v. Richfield Oil Corp.*, 124 Pa. Superior Ct. 43, 46, 187 A. 822. "Nor may the appellants assume, as their counsel apparently does, that X-ray photographs—especially of the soft parts of the body—, and their reading by a roentgenologist, with respect to cloudy surfaces on the plate, are in any way *conclusive* evidence"; and this is especially true where the X-ray plates were taken some weeks after the time to which the warranty of good health related. See also, *Zerby v. Reading Co.*, 125 Pa. Superior Ct. 397, 401, 189 A. 681.

The most that can be said for the defendant is that the evidence as to Hatfield's sound health on March 25, 1935 and April 16, 1935 was conflicting and therefore was for the jury. There was ample competent and credible evidence to sustain the verdict and the trial judge, in the exercise of his discretion, saw no occasion to grant a new trial.

(2) The 'insured' died on July 23, 1935. This

action was brought on September 16, 1936. The by-laws of the Sovereign Camp, which were offered and received in evidence, but not contained in or attached to the certificate or contract sued on, provided, inter alia, as follows:

"After proof has been properly executed and the claim approved by the President, the Secretary of the Association shall draw and cause to be delivered a warrant or warrants on the beneficiary fund, signed by the President and attested by the Secretary of the Association, for the amount approved, payable to the beneficiary or beneficiaries."   [Section 83(b)].

"No legal proceedings for recovery under a certificate shall be brought within ninety days after receipt of proof of death or disability by the Secretary of the Association; and no suit shall be brought upon a certificate unless said suit is commenced within one year from the date of death or within one year from the date of the rejection of the claim for disability benefits." [Section 83(c)]. Defendant contended that as the action was not brought within a year of the insured's death, it was commenced too late and required binding instructions in its favor. Plaintiff's reply to this position was that as the defendant was a fraternal beneficial association, incorporated under the laws of the State of Nebraska, its by-laws must be interpreted and enforced in accordance with the law of the state of its incorporation, (See *Modern Woodmen v. Mixer,* 267 U. S. 544, 551; *Royal Arcanum v. Green,* 237 U. S. 531, 542) ; and that according to the law of Nebraska, the limitation period of one year did not begin to run until the ninety days had expired for the furnishing of proofs of death. To prove the law of Nebraska, the plaintiff called as a witness, Hyman Shane, Esquire, a member of the Philadelphia bar, who testified that he had investigated and was familiar with the laws of the State of Nebraska, in reference to the interpreta-

tion of the by-laws relating to the time which must elapse before an action would lie and the time within which an action must be brought, and that the law of Nebraska as determined by the Supreme Court of that State was that an action would not lie until ninety days after the receipt of proofs of death, and that the limitation of one year within which an action must be brought did not begin to run until the ninety day period for filing proofs of death had expired. In substantiation of his interpretation of the law he produced the authenticated report of the case of *Kettenbach v. Omaha Life Assn.*, 49 Neb. 842, 69 N. W. 135, decided by the Supreme Court of Nebraska in 1896, where the policy provided that no action should be maintained unless commenced within one year of the death of the assured; it also provided that a death loss should be payable within ninety days after the final periodical mortuary premium paying day next ensuing the date of acceptance by the insurance company of satisfactory evidence of the death of the insured. The Supreme Court of Nebraska held that the cause of action could not possibly have accrued earlier than ninety days after death, and that the limitation period of one year did not begin to run until the right of action had accrued. Under the decisions of the Supreme Court of Nebraska, these plaintiffs could not have brought an action on the certificate until ninety days after the defendant had received proof of death, except for its rejection of the claim on October 15, 1935, and suit could be brought within one year from such rejection; as this action was brought on September 16, 1936, it was within the limitation period fixed in the defendant's by-laws, as construed by the highest court of the incorporating state.

Appellant did not contend, on the argument, that Mr. Shane's interpretation of the law of Nebraska was incorrect, but objected to the competency of the means or methods used for proving the law of Nebraska on the

trial. We agree with the court below that the evidence produced was competent: *Bayuk Bros. v. Wilson Martin Co.*, 81 Pa. Superior Ct. 195, 197; *Bollinger v. Gallagher*, 170 Pa. 84, 94, 32 A. 569; *Musser v. Stauffer*, 192 Pa. 398, 405, 43 A. 1018; *O'Malley v. Metropolitan Life Ins. Co.*, 47 Pa. Superior Ct. 533, 538.

The court instructed the jury on this point: "If you find from the evidence in this case that the claim in question was rejected on October 15th, and that suit was commenced the following year on September 16, 1936, then, of course, less than one year had elapsed since the date of the accrued claim"; and ruled that, in that event, the action was brought in time.

The defendant contends that this ruling is contrary to the decisions of this court in *Abolin v. Farmers American Mut. Fire Ins. Co.*, 100 Pa. Superior Ct. 433 and *Collins v. Home Ins. Co.*, 110 Pa. Superior Ct. 72, 167 A. 621—see also *O'Connor v. Allemannia Fire Ins. Co.*, 128 Pa. Superior Ct. 336, 194 A. 217; and of the Supreme Court in *Marcus v. Heralds of Liberty*, 241 Pa. 429, 88 A. 678; and *Huntington v. Supreme Commandery, Golden Cross*, 261 Pa. 168, 104 A. 498.

The decisions of this court relied upon related to actions against fire insurance companies, which contained in the policy contract a provision that "no suit or action on this policy shall be sustainable . . . . . . unless commenced within twelve months next after the fire." It may be admitted that the appellate courts of this State have not construed limitation clauses in insurance policy contracts in accordance with the ruling of the Supreme Court of Nebraska in *Kettenbach v. Omaha Life Assn.*, supra; but have ruled that where the limitation period fixes a definite date, such as the date of death, or the date of the fire, as the starting point of the period within which suit must be brought, and the period is reasonable, it will govern unless other provisions in the policy relative to proofs of death,

proofs of loss, ascertainment of loss or damage, etc., make it impossible to bring the action within the limitation period (*O'Connor v. Allemannia Fire Ins. Co.*, supra, p. 340; *Fritz v. British America Assurance Co.*, 208 Pa. 268, 57 A. 573; *J. Purdy Cope Hotels Co. v. Fidelity-Phenix Fire Ins. Co.*, 126 Pa. Superior Ct. 260, 191 A. 636). Such definite dates are distinguished from clauses providing that an action must be brought within one year after the right of action accrues, for in such case, if the policy contract requires proofs of death, proofs of loss, etc., to be furnished before an action can be brought, the right of action does not *accrue* until after such proofs, etc., have been furnished and the limitation does not begin to run until that has been done: *Huntington v. Supreme Commandery, Golden Cross*, 261 Pa. 168, 176, 104 A. 498.

It may further be admitted that if the defendant were a fraternal beneficial association incorporated under the laws of this State, and limiting its business to its chartered field, an action on its benefit certificate would have to be brought within one year after the member's death to be sustainable. But a different situation confronts us here. The defendant is incorporated as a fraternal beneficial association under the laws of Nebraska and if it confines its activities to its chartered powers and does not intrude into the field of insurance companies, its by-laws are to be construed and interpreted according to the laws of the state of its incorporation: *Modern Woodmen v. Mixer*, 267 U. S. 544; *Royal Arcanum v. Green*, 237 U. S. 531.

Appellant relies chiefly on the case of *Marcus v. Heralds of Liberty*, 241 Pa. 429, 88 A. 678, but it overlooks the full import and implication of that decision. In that case, a so-called beneficial association defended an action against it to recover a death benefit under one of its 'certificates', on the ground that a by-law of the association, which had not been included in or

attached to the certificate, prohibited a recovery when the deceased member committed suicide, and was sustained by the trial court on a motion for judgment non obstante veredicto. The Supreme Court held that the *character of the business done* by a so-called beneficial association is to be determined by the laws of each state where it transacts business and not by the laws of the state of its domicile. Inquiring into the character of the business transacted by the defendant association in that case (pp. 434, 435) the Supreme Court held "that under the guise of a beneficial association defendant is doing an insurance business" (p. 435). It accordingly held that the Act of May 11, 1881, P. L. 20, which provided "that all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain or have attached to said policy, correct copies of the application, as signed by the applicant, and the by-laws referred to; and, unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties," applied to the contract in suit, and the by-law relating to suicide not having been incorporated in or attached to the 'policy', it could not be used as a defense to the action, and accordingly reversed and entered judgment for the plaintiff on the verdict.

A careful reading of Mr. Justice ELKIN'S opinion in that case shows that he did not dispute the general

principle that the by-laws of a fraternal beneficial association, operating as such, are to be construed and interpreted in accordance with the law of the state of its incorporation or domicile; and that he recognized that a certificate of membership of a purely beneficial association was not an insurance policy within the meaning of the Act of 1881, supra, so as to make its by-laws inadmissible in evidence if not attached to the certificate (citing, *Beatty v. Supreme Commandery*, 154 Pa. 484, 25 A. 644; *Dickinson v. A. O. U. W.*, 159 Pa. 258, 28 A. 293; *Lithgow v. Maccabees*, 165 Pa. 292, 30 A. 830). But the gist of the decision was that where a so-called beneficial association transacted business in Pennsylvania and issued its certificates to members living within this State, our courts could inquire into the character of the business actually conducted within the State, and if the business so transacted was not that of a beneficial association, but rather of a life insurance company, it was subject to the laws of this Commonwealth regulating the business of insurance, including the provisions of the act of 1881 relating to applications for insurance and by-laws affecting the contract. The opinion refers with general approval to the decision of this court in *White v. Empire State Degree of Honor*, 47 Pa. Superior Ct. 52, 57, where a so-called beneficial certificate was held to be, in legal effect, an insurance policy, which, as it was not to become effective—just as in this case—until accepted by the member residing in Pennsylvania, was held to be an insurance contract governed by the law of this State, and not subject to provisions against suicide not stipulated in the policy.

An examination of the so-called beneficiary certificate and the application for the same signed by Hatfield in the present case brings it within the operations characterized by Mr. Justice Elkin (pp. 435-6) as doing an insurance business. The applicant was given

the option of choosing any one of the following plans: 'Ordinary Whole Life', Twenty-payment Life, Fifteen-payment Life, Universal Whole Life, Ten-year Renewable Term, Twenty-payment Endowment, Life Paid-up at Age 70. The questions follow in the line of applications for insurance risks as to physical condition, health and habits. The certificate provides for the payment of a definite sum to the beneficiaries at the death of the insured, and double that sum in case of accidental death. The title on the back of the certificate reads: "The Sovereign Camp of the Woodmen of the World Life Insurance—Twenty-Payment Certificate." The certificate makes specific provision for 'Death Benefit', 'Cash Surrender', 'Automatic Premium Loan', 'Paid-up Insurance' and 'Extended Insurance' according to tables set out per $1,000, from the third year to and including the twentieth, when it has a cash or loan value of $551.81, and a paid up insurance of $1,000. The payments are called 'premiums'. Plaintiff's exhibits 2 and 3 show that defendant advertised itself as the "World's Strongest Fraternal Insurance Association"; and "Woodmen of the World Life Insurance Association" with details of the various plans above referred to and others, the Twenty-year Endowment Option being called "a combined insurance, savings and income plan"; the Retirement Income Certificate, "Life Insurance, Savings and Old Age Security all in one Contract." The Ordinary Life certificate, Twenty-payment Life Certificate, Fifteen-payment Life Certificate and Life Certificate Paid-up at Age 70 all were based on "mortality standards of American Experience Table of Mortality and four per cent interest," and provided for cash and loan values, *paid-up insurance* and *extended insurance* after three years. Calling a policy of insurance a 'certificate' does not change its character as an insurance contract. "The law looks to the substance rather than to the form and is not to be cheated by

any gloss of words." *Marcus v. Heralds of Liberty,* supra, p. 435; *Com. ex rel. v. Fidelity Land Value Assurance Co.,* 312 Pa. 425, 428, 167 A. 300; *First Nat. Bk. v. Teachers Protective Union,* 109 Pa. Superior Ct. 467, 471, 167 A. 435; *Kolesar v. Slovak Evangelical Union,* 122 Pa. Superior Ct. 318, p. 324, 186 A. 302.

The provisions of the Act of May 11, 1881, P. L. 20, have been re-enacted in substance by section 318 of the Insurance Company Law of May 17, 1921, P. L. 682, p. 701, 40 PS sec. 441. The distinction between insurance companies and fraternal benefit societies as respects the Act of 1881, referred to by Mr. Justice ELKIN on page 431 of *Marcus v. Heralds of Liberty,* supra, (see also, *Porter v. Com. Casualty Co.,* 267 Pa. 410, 110 A. 153), has been preserved by the Act of May 20, 1921, P. L. 916, sec. 2, 40 PS sec. 1012; but a beneficial society or association which goes beyond its chartered field and engages in the insurance business is still subject, as respects the construction to be given the policies of insurance issued by it, to the insurance law of the Commonwealth and it cannot defend upon a provision of a by-law not contained in or attached to the certificate or policy.

Whichever horn of the dilemma is taken by the defendant in this case, the net result is the same. If it is carrying on the business of a purely beneficial society, the by-laws are governed by the law of the State of Nebraska, which interprets them so as to permit a beneficiary to bring an action within one year after the cause of action accrued. If, on the other hand, defendant is carrying on the business of a life insurance company in Pennsylvania, the contract will be construed as governed by our laws regulating insurance within this State and it cannot defend on any provisions of its by-laws or answers in the application for insurance not contained in or attached to the contract of insurance.

The assignments of error are overruled and the judgment is affirmed.