## Prudential Insurance Company of America v. Kudoba et al., Appellants.

Argued April 14, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles D. McAvoy,* for appellants.

*Kendall H. Shoyer,* with him *Frederick J. Shoyer* and *Fox & McTighe,* for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936.:

On October 10, 1932, plaintiff issued two insurance policies on the life of John Bury, each in the sum of $1,000. He died on October 23, 1932. Catherine Bury, his widow, the beneficiary of the policies, died on May 6, 1933, and defendants are the administratrices of her estate.

The present proceeding is a bill in equity praying for the cancellation of the policies on the ground that the insured was not in sound health when they were issued and that therefore they never went into effect. This contention rests upon a clause in the policies providing that "This policy shall not take effect if on the date hereof the Insured be not in sound health . . ." The learned chancellor entered a decree in favor of plaintiff and on appeal to the Superior Court the decree was affirmed. On petition of defendants an appeal to this court was allowed.

The policy by its terms was incontestable after one year from its date of issue, and, no suit having been brought thereon by defendants, plaintiff was justified in applying within that period to a court of equity for relief from possible assertion of liability: *Equitable Life Assurance Society v. Klein,* 315 Pa. 156; *New York Life Ins. Co. v. W. Bodek Corporation,* 320 Pa. 347.

Defendants contend that the evidence did not justify a finding that the insured was not in sound health on the date of the policy, but the testimony of Dr. Simpson that at the time of his examination of the insured on August 26, 1932, the latter was suffering from tuberculosis, and, in his opinion, could not have been cured of this condition by October 10, 1932, was sufficient upon which to base the conclusion that the insured was not in sound health at the time the policy was issued.

A sound-health clause phrased as in the present policies ordinarily operates as a condition precedent upon which the contract is dependent: *Youngblood v. Prudential Insurance Company of America,* 109 Pa. Superior Ct. 20; *Benzinger v. Prudential Insurance Company of America,* 317 Pa. 561. Defendants, however, assert that in the present case the insurance company by its medical representative made an examination of the applicant and that under such circumstances the sound-health clause is a condition only to the extent of protecting the company against a material change in the physical condition of the applicant between the time of the examination and the issuance of the policy.

This question was not decided by either the learned chancellor or the Superior Court, for the reason that there was no direct testimony in the case showing that a medical examination by plaintiff had actually been made. In defendant's answer to the bill in equity the fact of such an examination was alleged, but the physician was not called to testify by either of the parties. It appears, however, that at the bar of the Superior Court counsel for plaintiff, with commendable frankness, admitted that the insured had been examined by a representative of plaintiff, and this admission has become a matter of record in this court because, in the answer filed by plaintiff to defendants' petition for the allowance of an appeal from the Superior Court, there appears the following paragraph: "In answer to Paragraph 4 of the Petition, Respondent frankly admits, as

it did at the Bar of the Superior Court, . . . that there was an examination by a physician representing the Insurance Company prior to the issuance of the Policies of Insurance here involved and that the Insurance Company did not go into this question on the trial of the case for the reason that counsel for the Insurance Company expected the Defendants. to go into this question inasmuch as it was pleaded in Paragraph 7 of the Answer to Plaintiff's Bill in Equity, and the physician who had examined the Insured on behalf of the Insurance Company was the Insured's family physician and was the same Doctor who had sent the Insured to have his sputum examined by Doctor Simpson, and at the time of examining the Insured for the Insurance Company, said physician was false to his trust. The Insurance Company naturally did not want to call him as its witness on the trial and fully expected that he would be called as a witness by the Defendants. All of this was stated in Oral Argument to the Judges of the Superior Court."

As far as the research of counsel and our own investigation have disclosed there is no decision in Pennsylvania as to whether the effect of the sound-health clause is less comprehensive in cases where a medical examination has been made on behalf of the insurance company. There is no dearth of authorities, however, in other jurisdictions. Some of these[1] hold that, since there is no ambiguity in the wording of the clause, it must be given a literal interpretation and is not affected by facts or circumstances antecedent to the delivery of the policy.

---

[1] *Gallant v. Metropolitan Life Insurance Co.,* 167 Mass. 79 (44 N. E. 1073); *Barker v. Metropolitan Life Insurance Co.,* 188 Mass. 542 (74 N. E. 945); *Murphy v. Metropolitan Life Insurance Co.,* 106 Minn. 112 (118 N. W. 355); *Metropolitan Life Insurance Co. v. Betz,* 44 Tex. Civ. App. 557 (99 S. W. 1140); *Logan v. New York Life Insurance Co.,* 107 Wash. 253 (181 Pac. 906); *Greenbaum v. Columbian National Life Insurance Co.,* 62 Fed. (2d) 56.

The weight of authority[2] upholds a contrary doctrine, based upon the theory that presumably the medical examination was satisfactory to the company or the policy would not have issued, that by making such examination the company waived all future contentions as to the health of the insured at or prior to that time, and that the sound-health clause was to be construed as safeguarding the company against only such impairment of the health of the insured as may have arisen in the interval between the time the medical examination was made and the time when the policy was issued.

In our opinion the law of Pennsylvania should conform to that of the jurisdictions holding the latter view. While it is true that ordinarily a contract conditioned upon the existence of a certain fact is unenforceable if the condition is unfulfilled, even though the covenantee may have knowledge at the time of the making of the contract that the fact is otherwise and that the condition cannot be complied with, this principle is not fairly

---

[2] *Metropolitan Life Insurance Co. v. Moore,* 117 Ky. 651 (79 S. W. 219); *Western & Southern Life Insurance Co. v. Davis,* 141 Ky. 358 (132 S. W. 410); *Modern Woodmen of America v. Atkinson,* 153 Ky. 527 (155 S. W. 1135); *Metropolitan Life Insurance Co. v. Walters,* 215 Ky. 379 (285 S. W. 252); *National Life and Accident Insurance Co. v. Wallace,* 217 Ky. 160 (289 S. W. 219); *Webster v. Columbian National Life Insurance Co.,* 116 N. Y. Supp. 404; *Chinery v. Metropolitan Life Insurance Co.,* 182 N. Y. Supp. 555; *Johnson v. Royal Neighbors of America,* 253 Ill. 570 (97 N. E. 1084); *Fairfield v. Union Life Insurance Co.,* 196 Ill. App. 7; *James v. National Life and Accident Insurance Co.,* 265 Ill. App. 436; *Mutual Life Insurance Co. of New York v. Hoffman,* 77 Ind. App. 209 (133 N. E. 405); *Fidelity Mutual Life Insurance Co. v. Elmore,* 111 Miss. 137 (71 So. 305); *New York Life Insurance Co. v. Smith,* 129 Miss. 544 (91 So. 456); *Priest v. Kansas City Life Insurance Co.,* 116 Kan. 421 (227 Pac. 538); *Interstate Life and Accident Insurance Co. v. McMahon,* 50 Ga. App. 543 (179 S. E. 132); *Mid Continent Life Insurance Co. v. House,* 156 Okla. 285 (10 Pac. (2) 718); *National Life and Accident Insurance Co. v. Ware,* 169 Okla. 618 (37 Pac. (2) 905); *Mutual Life Insurance Co. of New York v. Frey,* 71 Fed. (2d) 259.

applicable to life insurance policies, where regard must
be had to the fundamental social and economic factors
underlying the whole fabric of the business of life insur-
ance as practically conducted.  If an applicant for such
insurance is examined by a medical representative of the
company, and is "passed," and a policy thereupon issues,
he is certainly justified in assuming, in the absence of
any fraud or misrepresentation on his part, that the
company has satisfied itself as to his state of health, and
that he can rest confident in the belief that he has ob-
tained a valid policy of insurance upon his life.  For the
company later to be allowed successfully to contend that
the policy never became effective because the applicant
breached the sound-health clause in that he suffered
from disease or bodily impairment when the policy was
delivered to him, in a case where the same condition ex-
isted when the company examined him, would be to give
countenance to a practice that, while perhaps not fairly
to be characterized as fraudulent, would be unreasonably
destructive of the protection which life insurance is
aimed to secure.  It would result, as argued in appel-
lant's brief, that "no one would ever know if he were in-
sured or not, even though he has passed a medical ex-
amination and received a policy."  The insertion of a
sound-health clause in the policy is justified only on the
theory intimated by the court in *Youngblood v. Pruden-
tial Insurance Company of America, supra,* where it is
said (page 21) : "The company, waiving any health ex-
amination, or any warranty by the insured in an appli-
cation, had the right to protect itself by incorporating
such a condition [sound-health clause] into the con-
tract."  If an examination is made and the company,
either with knowledge of an illness of the applicant
thereby disclosed or without discovery of a pathological
condition which in fact existed, thereupon issues a pol-
icy, it should not be allowed to repudiate liability by
reason of any defective status of the health of the in-
sured at that time, in the absence of any misrepresenta-

tions or fraudulent statements on his part. We conclude, therefore, that the sound-health clause has no application to such diseases as the insured may have had at the time of the medical examination, but that its legal scope must be restricted to mean only that the applicant did not contract any new disease impairing his health nor suffer any material change in his physical condition between the time of such examination and the date of the policy.

In the present case there was no proof by plaintiff of any change in health of the insured after he was examined by the medical representative of the company and before the issuance of the policies. Accordingly, the decree of the court below, affirmed by the Superior Court, is reversed, and the bill dismissed; costs to be paid by appellee.