Kessler *v.* National Life and Accident Insurance Company, Appellant.

Argued October 8, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

320

[redacted]

*Louis F. McCabe,* for appellant.

*J. Herman Kahn,* with him *Maxwell L. Kahn,* for appellee.

OPINION BY CUNNINGHAM, J., December 14, 1936:

This appeal by the defendant insurance company is from a judgment entered against it in the court below for want of a sufficient affidavit of defense to the action in assumpsit brought against it by the plaintiff as the beneficiary named in a policy of life insurance issued to her husband, Louis Kessler.

The policy was issued in the amount of one thousand dollars on January 13, 1933. On July 14, 1933, it lapsed for non-payment of premiums, but was reinstated on September 7, 1933. The death of the insured occurred on November 15, 1934, and the present suit was brought by the beneficiary on June 17, 1935. When the affidavit of defense was filed on July 3, 1935, plaintiff took her rule for judgment. By reason of the pendency in this court of certain proceedings in equity, hereinafter referred to, the disposition of the rule was delayed until February 7, 1936, when it was made absolute and this appeal by the company followed.

Attached to the policy was a copy of the application therefor. It consisted of two parts—the first, containing the answers of the applicant to questions relative to age, residence, occupation, etc., was signed by him in the presence of one of the company's agents, Harry B. Dyzansky, and the second, recording the insured's

replies to questions concerning the condition of his health, medical treatment, etc., was signed in the presence of Francis C. Halling, M. D., apparently one of the company's medical examiners.

The second part of the application was headed with the following instruction: "This part to be completed by agent or superintendent if non-medical, otherwise by examiner. If completed when received by examiner, answers should be verified."

The first sentence of the second paragraph of the contract of insurance reads: "This insurance is granted in consideration of the application herefor, a copy of which is hereto attached and made a part of this contract, and of the payment of premiums as follows:"

Other applicable provisions of the policy are: "This policy and the application therefor taken together constitute the entire contract. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in a written application and a copy of such application is endorsed upon or attached to the policy when issued." "Except for non-payment of premium when due,...... this policy shall be incontestable after two years from its date of issue."

By the terms of the contract it is stipulated that it shall become "effective" upon delivery to the insured "during his lifetime and good health."

For present purposes it is not necessary to recite the averments of the affidavit of defense in detail. It is sufficient to say that the company defended upon the ground that the issuing of the policy, as well as its reinstatement, had been induced and procured through the knowingly making of false answers by the insured, relative to the condition of his health and previous medical treatment, both in the original application and in his request for reinstatement. In general, it was

averred that the insured had fraudulently concealed the fact that he was suffering from certain diseases of his lungs (which caused his death) when the policy was applied for and issued and when its reinstatement was procured, and had also failed to disclose the fact that he had been under treatment for tuberculosis in several hospitals. Other averments were to the effect that the beneficiary had knowledge of these misrepresentations and had hindered and delayed the representatives of appellant in conducting an investigation after the death of the insured.

The unusual situation here present arises out of the fact that the insurance company on January 14, 1935, one day after the expiration of the two years' contestability clause of the policy, instituted a proceeding in equity against the beneficiary in the court of common pleas No. 2 of Philadelphia County for the cancellation of the policy upon the ground of fraud practiced by the insured in procuring it and in having it reinstated. Preliminary objections to the original bill were sustained and an amended bill filed. The amended bill was dismissed upon the ground that the company was not entitled to contest its liability, upon the grounds set out in its bill, after the expiration of two years from the issuing of the policy. Upon appeal to this court, the company contended that as the reinstatement had also been procured by fraud it had a legal right to contest its liability at any time within two years from September 7, 1933, the date of reinstatement. It relied, inter alia, upon a provision in the application for reinstatement reading: "That if my death shall occur within one year after the reinstatement of said policy, the insurance thereby provided shall be avoided by any breach of any of my warranties or agreements herein contained."

As a basis for reinstatement, the insured "warranted and agreed," inter alia, that he was then, and since the

date of his original application had·been, "in good health."

In affirming the decree dismissing the bill we said through STADTFELD, J., *(National Life and Accident Insurance Co., v. Kessler,* 120 Pa. Superior Ct. 277, 182 A. 117), that for the purposes of that case we assumed the alleged misrepresentations were such as to have invalidated the policy at the option of the company if its liability had been contested within the contestable period. Such an assumption, however, is not necessarily applicable in the present controversy. We then held that the reinstatement of a policy does not result in the making of a new insurance contract but is simply a revival and restoration of the original policy upon the conditions prescribed therein. As the death of the insured did not occur within one year after the reinstatement, the provision for avoidance by reason of a breach of the warranties contained in the application for reinstatement had no application, but the company still had the right to contest its liability at any time prior to January 13, 1935, upon the ground of fraud practiced in making the original application. In the course of the opinion, the inadvertent·statement is made that the death of the insured occurred "after both contestable periods had expired." The fact is that it occurred on November 15, 1934, more than one year after the reinstatement but within two years after the date of the policy. The erroneous statement, however, did not have any bearing upon the conclusions reached in the opinion.

As to the alleged participation of the beneficiary in the fraud, we held that if the company, by reason of the incontestable clause, could not defend upon the ground of fraud by the insured, it was not permissible to set up participation by the beneficiary in that fraud. Our opinion was filed December 18, 1935, and no petition for an allocatur was filed with the Supreme Court.

Counsel for appellant in this appeal frankly admits it was taken to "remedy the omission" and that the averments of the affidavit of defense now before us are practically identical with the allegations of the amended bill in equity.

The reasons assigned by the present plaintiff in support of her rule for judgment were that the matters set forth in the affidavit of defense had been adjudicated in the equity proceedings, and that the affidavit fails to set forth any facts indicating that the company contested its liability in any manner "within the two year contestable period." The docket entry relative to the judgment reads: "February 7, 1936, Rule absolute by agreement." On February 17, 1936, damages were assessed at $1,075. and the company took the present appeal. On September 23d the appellee moved to quash the appeal upon the ground that when the rule for judgment came on for argument "it was agreed by counsel for both parties that the rule be made absolute by agreement," and the only purpose of the appeal is to obtain a reconsideration of what has already been decided by this court.

The version of counsel for appellant is thus set forth in his answer to the rule to quash. "The court had postponed argument on the rule until the decision of the appellate court in the equity suit above referred to. When the rule finally was fixed for hearing, counsel for the present appellant stated to the court that it had no argument to advance on this question before the court other than that which the court had already heard, and on which it had passed its opinion in the equity suit. Counsel for the present appellant in response to an inquiry by the court, stated that there was no reason for extended argument and that since the case would be appealed, he had no further argument to advance why judgment should not be entered on the rule."

Since the taking of this appeal there have been two appellate court decisions bearing upon the questions here involved. In *Prudential Insurance Company v. Ptohides,* 122 Pa. Superior Ct. 469, 186 A. 386, decided July 10, 1936, it was held that the only legally effective way in which an insurer may "contest" its liability under a policy, upon the ground of fraud in its procurement, is by offensive or defensive proceedings in a court. That is, either by the institution, within the time limited, of appropriate proceedings for cancellation, or by making a defense to a suit brought within the period upon the policy. It was repeated in that case, citing *Feierman v. Eureka Life Ins. Co.,* 279 Pa. 507, 124 A. 171, and *Cohen et al. v. Metropolitan Life Ins. Co.,* 112 Pa. Superior Ct. 314, 171 A. 106, that the death of the insured during the period of contestability does not affect either the running of that period or the obligation of the insurance company to act within the time specified if it desires to contest its liability.

The defense set out in the affidavit is mainly based upon the above quoted "sound health" clause. It is averred the contract never became effective because at the date of the application, January 5, 1933, and when the policy was delivered on January 13, 1933, the insured was suffering from tuberculosis.

In *Prudential Insurance Company v. Kudoba,* 323 Pa. 30, 186 A. 793, decided June 26, 1936, our Supreme Court definitely adopted the doctrine that where a medical examination of an applicant for life insurance has been made on behalf of the company, as in this case, the sound health clause "is less comprehensive" than in cases like *Youngblood v. Prud. Ins. Co.,* 109 Pa. Superior Ct. 20, 165 A. 666, in which such examination had been waived, and safeguards the company "against only such impairment of the health of the insured as may have arisen in the interval between the time the medical examination was made and the time when the

policy was issued." "If an examination is made and the company, either with knowledge of an illness of the applicant thereby disclosed or without discovery of a pathological condition which in fact existed, thereupon issues a policy, it should not be allowed to repudiate liability by reason of any defective status of the health of the insured at that time, in the absence of any misrepresentations or fraudulent statements on his part. We conclude, therefore, that the sound-health clause has no application to such diseases as the insured may have had at the time of the medical examination, but that its legal scope must be restricted to mean only that the applicant did not contract any new disease impairing his health nor suffer any material change in his physical condition between the time of such examination and the date of the policy." (p. 35)

It may well be doubted, in the light of the reference in *Evans v. Penn Mutual Insurance Co.*, 322 Pa. 547, 186 A. 133, to narratives "incomplete in detail," whether the mere failure of an applicant to mention all the hospitals in which he had been a patient would amount to such "fraud or misrepresentation" as would prevent the application of the rule.

Moreover, there was uncontroverted evidence in the Kudoba case that the insured had been told, prior to his application, by the physician to whom he had taken a sample of his sputum for examination that he had tuberculosis.

At least as to cases in which the cause of action arose subsequent to July 19, 1935, the scope and effect of sound health provisions have been materially limited, even where medical examination has been waived, by the amendment of that date, (P. L. 1319) to the Insurance Act of 1921.

That amendment, in the form of an additional section, provides in substance that in any case where a medical examiner, or the agent of the insurer record-

ing the answers of the applicant when a medical examination is waived, reports the applicant a fit subject for insurance, the company shall thereby be estopped from setting up the defense that the insured was not in the condition of health required by the policy at the time the medical examination was made, or the answers recorded, "unless the same was procured by or through the fraud, deceit, or misrepresentation of or on behalf of the insured." In *Evans v. Penn Mutual Insurance Co.*, supra, (a case in which there was no medical examination) will be found many examples of what will, and of what will not, amount to fraud, deceit, or misrepresentations. As to alleged misrepresentations, the burden is always on the insurer to show that they were false in fact and known to be false.

Under the circumstances here present, we have concluded to deny the motion to quash and to dispose of the appeal upon its merits.

In our opinion, the affidavit of defense was insufficient, not only because it contained no averments from which it could be inferred that appellant contested its liability under the policy within the contestable period prescribed therein, but also because it was not averred that the insured had suffered any material change in his physical condition between the date of the medical examination by appellant's physician and the date the policy was issued.

We are not to be understood as approving of the method adopted by counsel for appellant to cure his oversight in neglecting to petition for an allocatur at the proper time. On the other hand, we are not disposed to deprive this litigant, upon technical grounds, of the exercise of any right it may have. Upon full consideration of the record now before us, we overrule all the assignments of error to the action of the court below.

Judgment affirmed.