## Germano, Appellant, *v.* Home Life Insurance Company of America.

Argued March 16, 1939.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*Henry W. Balka,* with him *Abraham T. Needleman,*
for appellant.

*Arthur S. Arnold,* for appellee, was not heard.

OPINION BY KELLER, P. J., April 12, 1939:

This case was rightly decided in the court below. The
action was in assumpsit on a policy of life insurance

issued to Bessie Germano and Daniel M. Germano—wife and husband respectively—payable to the survivor, as beneficiary, on the death of the other insured. It was, in this case, equivalent to a policy of insurance on the life of Daniel M. Germano, payable on his death to his wife, this plaintiff.

The application for insurance, a copy of which was attached to the policy and made a part thereof, was signed on October 21, 1936. It contained in Part I, inter alia, just above the signature of the applicant, the provision, "It is agreed *that there shall be no liability hereunder until a policy shall be issued and delivered to me, while in good health,* and the first premium actually paid during my lifetime." This was followed, "in continuation of Application" by Part II, "Questions to be asked by the Medical Examiner, who will fully explain the questions, write the answers himself and witness the signature of the person examined." Under this head, appeared various questions relating to the health of the applicant, his parents, brothers and sisters, whether he had received treatment in any hospital or dispensary during the last ten years—to which he answered, "No"—and whether he had ever had any of forty named diseases—including appendicitis, diseases of abdominal viscera, tumor, chronic ulcer or abscess,—to all of which he answered, "No." Appropriate answers to all the questions were written by the medical examiner, and the paper was then signed by the applicant, immediately below a statement declaring the answers to be true, and was witnessed by C. H. J. Barnett, 1317 Dickinson Street, who was evidently the company's medical examiner.

The policy in suit, dated November 5, 1936, which provided that the insurance began at 12:00 o'clock noon on November 5, 1936, contained in the body of the policy, in full sized type, directly under the initial paragraph fixing the amount of insurance, the insured and the beneficiary, the following clause:

"This contract, subject to the conditions and provisions set forth herein, is granted in consideration of the application for this Policy, which consists of **Part I,** and the statements made to the Medical Examiner, designated as **Part II,** copies of which are hereto attached at the date of issue, and made part hereof, *and the delivery of this Policy during the lifetime and good health of the Insured,* and the payment of the semiannual premium of Twenty-four 49/100 Dollars, and a like sum on or before the Fifth day of May, November, in each year thereafter during the continuance of this contract." (Italics supplied).

The policy was delivered on November 7, 1936.

On the evening of November 5, 1936, the insured, Daniel M. Germano, was taken sick with severe pains in the abdomen. His family physician was called who diagnosed the trouble as appendicitis. The next morning, November 6th, he was removed to a hospital, suffering acute pain, a colicky condition and nausea, and was operated on for appendicitis, but when his abdomen was opened up by the surgeon, it was found not to be appendicitis, but a tumor of the jejunum—that is, the division of the small intestine between the duodenum and ileum—, which had undergone destruction and become gangrened. The surgeon, who performed the operation, testified that he cut off this portion of the bowel, the tumorous part, but the patient did not convalesce and he died on November 24, 1936. He also testified that the acute pain, colicky condition and nausea from which Germano suffered on November 6th, had developed suddenly and had not been present during the growth of the tumor. In the proofs of death furnished the defendant company, the chief resident physician of the hospital made affidavit that the immediate cause of Germano's death was Leiomyosarcoma of the Jejunum. He gave no explanation of this term, but the Shorter Oxford Dictionary defines 'Leio' as the combining form of the Greek, Leios, meaning smooth;

'Myo' as the combining form of the Greek, Mus, meaning muscle; and sarcoma as tumor.

At the conclusion of the plaintiff's case the court granted a compulsory non-suit, which it subsequently refused to take off, holding, in effect, that under the provisions of the policy, it never took effect as a contract of insurance because on its delivery the insured was not in good health, but had just been operated on for a serious gangrenous bowel tumor, a major operation necessitated by a dangerous and critical condition of health which had developed since the signing of the application and had suddenly become acute and active, and which resulted in his death eighteen days later. The plaintiff appealed.

Plaintiff's counsel urge upon us that under the decision of the Supreme Court in *Prudential Insurance Co. v. Kudoba*, 323 Pa. 30, 186 A. 793, and the Act of July 19, 1935, P. L. 1319, she is entitled to recover on the policy, because the evidence of the operating surgeon was to the effect that the tumor was probably of several months' growth and was present, although not known to the insured, when he made application for insurance and answered the questions of the medical examiner. But, when properly applied, they rule this case against her.

While it may be conceded that the insured had this tumor on October 21, 1936, when he signed the application and made answer to the questions asked by the medical examiner, it was dormant, quiescent or inactive and gave him no pain, discomfort or trouble. It was then not of a character to put him upon notice of the condition. Had it remained so until after the policy had been delivered, under the Kudoba case and the Act of 1935, supra, appellant would have been in a position to enforce payment, for the policy would have taken effect as a contract of insurance and the beneficiary would have been entitled to recover unless it was shown

that the insured had been guilty of fraud, deceit or misrepresentation in securing the insurance.

But the ruling in the Kudoba case and the provisions of the Act of July 19, 1935, P. L. 1319, must not be extended beyond their plain and fair import and effect. See *Schware v. Home Life Ins. Co.*, 134 Pa. Superior Ct. 53, 3 A. 2d 949. A policy of insurance does not go into effect until it is delivered; and even on delivery, its effective date may be in the future: *Potts v. Metropolitan Life Ins. Co.*, 133 Pa. Superior Ct. 397, 398, 2 A. 2d 870. If between the signing of the application and the delivery of the policy the applicant's condition of health suddenly changes, so that a disease that was dormant, quiescent and inactive becomes active, acute and dangerous to life, requiring a major abdominal operation and the cutting off of part of the small intestine, which has become gangrenous, and the policy is delivered without knowledge of these facts, the prior examination by a medical representative, who failed to discover this latent disease, or the passing of the applicant as a sound risk by the company's agent, should not be extended so as to render inoperative a perfectly fair and reasonable provision or condition in the policy that the insured must be in good health when the policy is delivered; since there has been, in the language of Mr. Justice STERN in the Kudoba case (p. 36), a "material change in his physical condition between the time of such examination and the date [or delivery] of the policy"; and it does not matter that such change results from the sudden growth and development of a disease which the insured had when he signed the application for insurance but of which he was unaware.

It certainly cannot be successfully asserted that the insured's condition of health on November 7, 1936 was the same as it was on October 21, 1936 when he applied for the insurance and answered the questions put to him by the medical examiner. There was a serious and critical change for the worse in his condition of health

the day before the policy was delivered, and it is inconceivable that if the company had known it, it would have delivered the policy. See the inquiries in the application referred to above.

The assignments of error to the other rulings of the court below, even if sustained, could effect no substantial difference in the outcome of the action.

The order of the court below refusing to take off the judgment of non-suit is affirmed.