McCrory *v.* Scranton Life Insurance Company,
Appellant.

Argued April 22, 1942.

2

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Russell R. Yost,* of *Graham, Yost, Meyers & Graham,* for appellant.

*John M. Bennett,* of *Weimer & Bennett,* for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

This action in assumpsit is founded upon an insurance policy issued by the defendant on the life of Charles B. McCrory, naming the plaintiff, his wife, as beneficiary. The policy provided upon the death of the insured for monthly payments of $48.80 to the beneficiary for a period of 120 months. The trial resulted in a verdict of $356.72, the total amount of the payments which had accrued at the time of the trial.

The defense to plaintiff's claim was (1) that the insured was not in sound health at the time of his examination by the defendant's medical examiner; and (2) that he was not in sound health at the time of the delivery of the policy, which fact he failed to disclose to the defendant company.

The first position has been abandoned as the appellant concedes that it cannot be defended successfully in view of the decisions in *Prudential Insurance Company v. Kudoba,* 323 Pa. 30, 186 A. 793, and *Engle v. National*

*Council,* 133 Pa. Superior Ct. 149, 1 A. 2d 798. They hold that if an applicant for insurance is examined and passed by a medical representative of the insurer and a policy issued, in the absence of fraud or misrepresentation on the applicant's part, the policy is not assailable on the ground of previous unsound health.

Before considering the legal aspects involved in the defense that the insured was not in sound health when the policy was delivered, a further reference to the facts seems advisable. The application for insurance was made June 18, 1937, but not delivered until July 23 of that year. The policy contained a provision that it shall not be binding "unless and until it is delivered to the Insured in his lifetime and sound health." The defendant, having to rely upon an affirmative defense (*Palyo v. W. & S. Life Ins. Co.,* 114 Pa. Superior Ct. 583, 174 A. 640), showed that on the 14th, 17th, 21st, and 25th of June 1937 Dr. Paul McCloskey treated McCrory for a head cold, which included a puncturing of the sinus with a small needle. This doctor testified that after he returned from his vacation he saw McCrory on July 22 as he was "to be checked up." He found McCrory had recovered from his cold and was in good health. Dr. W. E. Matthews, the defendant's doctor, examined him on June 18, 1937, and passed him for insurance as a first class risk. The policy was delivered to McCrory between 10 and 11 o'clock in the morning of July 23, while he was at work in his place of business. Between 5 and 6 o'clock that same afternoon Dr. J. L. McAneny attended the insured at his home for a nasal hemorrhage which persisted thereafter for several days. On July 29 the insured was admitted to a hospital where he was examined by Dr. J. W. Grady, the resident physician. He diagnosed McCrory's principal ailment as cirrhosis of the liver, which eventually caused his death. This witness testified that the wife in giving her husband's

personal history said that she had noticed a muddy appearance in his eye [for which the doctor gave the technical term of icterus] two weeks, and jaundice of the skin a week, prior to his entering the hospital.

McCrory was discharged from the hospital the 9th or 10th of August 1937 and went back to his work, which he continued until early in May 1938. He returned to the hospital on June 4 of that year and died the next day. There was no testimony that he knew he was afflicted with a liver complaint either before, or at the time, the policy was delivered.

The defendant submitted a point for binding instructions which the court refused. Instructions were given to the jury that if McCrory was not in sound health and knew that fact and represented by his conduct that he was in sound health, then the defendant would not be liable. "If, on the other hand, the insured did act in good faith, or, with such knowledge of his physical condition believed himself to be in sound health, and nothing to indicate anything to the contrary, no grave disease or ailment, no serious bodily affection which was affecting his general condition of health, then the beneficiary would be entitled to the proceeds of·this policy ......"

The plaintiff concedes that a breach of the sound health condition was pleaded, but contends there was no averment in the affidavit of defense of misrepresentation or that McCrory fraudulently made false statements or that there was proof of a material change in the insured's condition until after the delivery of the policy. In the fourteenth paragraph of the affidavit of defense it is averred that at the time of the receipt of the policy the insured "was not in sound health, but was suffering from a diseased or disordered liver or an enlargement thereof, and also from ...... sinus trouble, for which latter he was treated by a physician, to wit, on July 18, 1937, all of which he failed to disclose to the defendant." There is no specific allegation

in the affidavit of defense that there was a material change in the insured's condition between the medical examination on June 18, and the delivery of the policy. The evidence showed the change in his condition was not discovered until July 29 or 30, 1937. In *Kessler v. National Life and Accident Insurance Co.*, 124 Pa. Superior Ct. 319, 327, 188 A. 377, we held an affidavit of defense to be adequate should set forth that the insured had suffered a material change in his physical condition between the date of the examination by the company doctor and the date the policy was issued.

In *Germano v. Home Life Insurance Co. of America*, 135 Pa. Superior Ct. 208, 5 A. 2d 449, the insured made a written application for a policy on October 21, 1936. A medical examination followed and a policy of insurance dated November 5 was issued, which provided that the insurance began at 12 o'clock noon that day and contained a sound health provision. The policy was delivered on November 7. On the evening of November 5 the insured was taken ill and the next day he was operated on when it was learned that he had a cancerous tumor and his death followed 18 days later. While the insured had a tumor when he signed the application for insurance and made answer to questions asked by the medical examiner, during that period it was dormant or inactive and gave no pain or discomfort and therefore did not put the insured upon notice of his condition. We there said, p. 212: "Had it remained so until after the policy had been delivered, under the Kudoba case and the Act of 1935, supra, appellant would have been in a position to enforce payment, for the policy would have taken effect as a contract of insurance and the beneficiary would have been entitled to recover unless it was shown that the insured had been guilty of fraud, deceit or misrepresentation in securing the insurance."

In the case at bar the insured's ailment apparently was quiescent and unknown, giving him no warning of

6

its presence until after the policy was delivered. In any event, there was no material change, of which the insured was aware, between the time of the medical examination and the date of the delivery of the policy.

The appellant argues further that the proof of death executed by Dr. J. L. McAneny stated that the insured had suffered from cirrhosis of the liver for a period of one year, which would indicate that he had that disease since June 1937, which was prior to the time when the policy was delivered, and therefore admission of documents offered in evidence by the plaintiff bound her and that the defendant was entitled to binding instructions thereunder or at least to have the questions submitted to the jury with proper instructions.

Proofs of death, however, may be contradicted or explained, and the disputed issues raised are for the consideration of the jury.

Taking Dr. McAneny's statements in their most favorable aspect as to the duration of the liver affliction it would indicate that in his opinion McCrory's illness extended back to June 1937, but even so it was incumbent upon the defendant, relying upon affirmative defense, to show that there was a material change in his physical condition between June 18 and July 23 of that year. Assuming Dr. McAneny's opinion was correct that McCrory had cirrhosis of the liver prior to June 1937, it was dormant so that a medical examination would not disclose its presence, and it was not known to McCrory. The effect of the examination resulted in restricting the issue as to whether a material change had occurred from that date until the policy was delivered. Furthermore, Dr. McAneny was not at all certain when the insured contracted cirrhosis of the liver as is shown by the following excerpt from his testimony on cross-examination:

"Q. Would you say this time you wouldn't know when Charles McCrory contracted cirrhosis of the liver?

"A. No, I don't know when he contracted it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q. I understand you to say definitely that he had cirrhosis of the liver July 23, when you first saw him?

"A. Not on July 23, I can't say that definite."
It follows that the alleged breach of the sound health provision was for the jury's consideration.

The appellant's next point is that the court in its charge fell into error in instructing the jury that the success of insurer's defense depended upon whether fraudulent action upon the part of McCrory was proved. We think that criticism is not well founded in view of defendant's failure to either aver or prove that there was a material change in McCrory's physical condition between the dates of his examination by the defendant's doctor and the delivery of the policy. How could the court in such circumstances say that defense was available to the insurer? The only possible escape from liability for the insurance company was a reliance upon the jury's finding that the insured was guilty of fraudulent conduct. That issue was submitted to the jury in a charge that was clear, comprehensive, and as favorable to the defendant as it had the right to ask.

There is a further and final complaint that the court erred in refusing to admit in evidence defendant's exhibit "B", a paper dated July 23, 1937, that acknowledged the receipt of the policy, certifying "that I have not been ill nor have I consulted a physician or physicians since I was examined for said policy."

[The Act of May 17, 1921, P. L. 682, Art. III, §318, 40 PS §441, provides: "All insurance policies, . . . . . . in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract . . . . . . *or have any bearing on said contract,* shall contain, or have attached to said policies, correct copies . . . . . . and, unless so attached

...... no such application ...... or other rules shall be received in evidence ......" (Italics supplied).]

The paper undoubtedly had a bearing on the contract as it provides that the latter should not be binding under certain conditions. The plaintiff in reply to "New Matter" admitted the execution of the paper, and Dr. McCloskey, McCrory's physician, testified that he had treated the insured for a head cold on two different dates before, and on two dates after, the medical examination so that in effect the certificate would have been simply cumulative evidence.

The learned court sustained exceptions to admission of this cumulative evidence not only on the ground that the certificate was not part of the policy, but it did not aid in establishing that there had been a material change of health between the date of the medical examination and the date of the delivery of the policy. The head cold or sinus infection, according to Dr. McCloskey defendant's witness, was a minor affliction which was not shown to have any relevancy whatever to the death of the insured. We think this paper was not of such evidential value that its exclusion amounted to substantial error.

In *Bailey v. Pacific Mutual Life Insurance Co.*, 336 Pa. 62, 6 A. 2d 770, the defense set up was that the insured in her written application for a policy knowingly made false and fraudulent answers to questions which were material to the risk. Neither that case nor the others cited by the appellant control the one before us.

A review of the entire record brings us to the conclusion that no reason has been advanced to sustain any of the assignments of error.

Judgment is affirmed.