Minzenberg *v.* Metropolitan Life Insurance
Company, Appellant.

558

Argued April 26, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, ROSS and ARNOLD, JJ. (DITHRICH, J., absent).

*D. C. Jennings*, for appellant.

*Charles Lysle Seif*, with him *Joseph L. Best* and *Seif, Evashwick & Best*, for appellee.

OPINION BY RHODES, J., July 19, 1945:

This is an action in assumpsit on a life insurance policy issued by defendant to Otto C. Minzenberg on September 18, 1941, and delivered to him on September 25, 1941. Plaintiff is the beneficiary and widow of the insured. The premiums were paid by insured to the time of his death on March 21, 1943. Proofs of death were duly furnished to defendant; demand for payment was made by plaintiff which was refused by defendant. The pleadings consist of plaintiff's statement of claim, defendant's affidavit of defense and new matter, and plaintiff's answer to new matter. The defense was that

the policy was not issued and delivered during the continued insurability of the applicant. Defendant disclaimed any right to the premiums paid and offered to return the same. The jury returned a verdict in favor of plaintiff. Defendant moved for judgment n. o. v. Defendant's motion was overruled by the court below, and judgment was entered on the verdict in favor of plaintiff. Defendant has appealed.

All matters of fact having been determined by the jury in favor of plaintiff, the evidence must be viewed accordingly. *Burckhalter et ux. v. F. W. Woolworth Co.*, 340 Pa. 300, 302, 16 A. 2d 716; *Drake v. Emhoff*, 145 Pa. Superior Ct. 498, 508, 21 A. 2d 492.

On September 11, 1941, Otto C. Minzenberg signed and delivered to appellant an application for a policy of life insurance, and the following day he underwent a medical examination by appellant's doctor. The latter certified that the applicant was an insurable risk; the policy was then issued and delivered. It is conceded that all questions submitted to the applicant as contained in the application, including questions as to prior medical and hospital attendance and operations, were correctly answered. However, on the evening of September 13, 1941, Minzenberg, together with his wife, was driving his sister-in-law to consult a Dr. Stoffan. He had no intention of consulting a physician on this occasion, but at his wife's suggestion he had Dr. Stoffan give him a routine check-up. Upon examination Dr. Stoffan found he had some enlarged lymph glands, and suggested a further examination in a hospital to determine what might be the cause. On September 15, 1941, Minzenberg, who was then on his vacation, went to the Allegheny General Hospital for an examination. One of the glands was removed. A number of tests were made such as blood chemistry, urinalysis, blood count, blood sugar, Wasserman and Kahn blood tests, and X-ray of the chest; and the results showed that he was normal in these respects. Minzenberg was a large healthy-appearing man, weighing

about 200 pounds, and while at the hospital he was not confined and lived normally. He returned home on September 21, 1941. Unknown to him and his wife, the plaintiff, the examination of the removed gland indicated that he had Hodgkin's disease. But it was impossible to determine definitely whether he actually was suffering from this disease until a complete laboratory report was made; this report was not completed until October 3, 1941. Dr. Stoffan testified that he himself was surprised "when [the report] did come back that way." Minzenberg was never advised that he had Hodgkin's disease, or that he suffered from any other affliction. After returning from the hospital, the policy was delivered to him on September 25, 1941. He returned to his position as guard with the Mellon National Bank in Pittsburgh. He had no difficulty in performing his work, nor was there any difference in his health or appearance throughout the remainder of 1941 and 1942. He continued to work as usual until a short time before his death on March 21, 1943.

The facts are not in dispute; and the material matters are admitted in the pleadings. Appellant does not contend that it was necessary for insured to have notified it of the disease with which he was afflicted, which of course would have been impossible as he did not know the fact himself, but appellant does contend that it was insured's duty to inform it of his consultation with Dr. Stoffan and his examination at the hospital between the date of the application and the date of the delivery of the policy. It is appellant's position that the failure on the part of insured to disclose these facts rendered the policy void the same as if the medical and hospital attendance had occurred prior to the making of the application and there had been no disclosure thereof or there had been false answers relating thereto. "Inquiries as to prior medical attendance are material to the risk and false answers thereto must of necessity permit the insurer to avoid the policy": *Prevete v. Metro-*

*politan Life Insurance Co.*, 343 Pa. 365, 368, 22 A. 2d 691, 692; *Derr et al. v. Mutual Life Insurance Co. of New York*, 351 Pa. 554, 559, 41 A. 2d 542, 544; *Harkins v. John Hancock Mutual Life Insurance Co.*, 154 Pa. Superior Ct. 387, 391, 35 A. 2d 754. Appellant bases its right to this information from insured on the following parts of the application, which is part of the policy, signed by the insured:

"It is understood and agreed: . . .

"4. The Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and contined insurability of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof, except that if the applicant pays in cash to the Company, on the date this application is signed, an amount equal to the full first premium on the policy applied for and if this application is approved at the Company's Home Office for the class, plan and amount of insurance herein applied for, then the policy applied for shall be in force from the date of the application." . . .

"7. (a) When last sick? (Answer) Don't remember. . . .

"9. Have you ever been an inmate of a hospital, sanatorium, asylum or cure, whether for observation, examination or treatment? If yes, give date, duration, nature of ailment and name of institution. (Answer) Appendectomy, Jan., 1939, Veterans Hosp., Aspinwall, Pa. Dr. Fellows. 3 weeks. Good scar, no hernia. . . .

"22. Have you ever had any (a) Surgical operation? (Answer) No.

"23. What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state. (Answer) None."

It is stipulated in the policy that all statements made by the insured in the absence of fraud shall be deemed representations and not warranties. See *Livingood v. New York Life Insurance Co.,* 287 Pa. 128, 131, 134 A. 474. In addition the policy contained the following provision: "This policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties."

Under such contract there was no continuing representation. *Watson v. Metropolitan Life Insurance Co.,* 145 Pa. Superior Ct. 369, 379, 21 A. 2d 503. Violation of the provision in the application requiring delivery of the policy "during the lifetime and continued insurability of the applicant" would prevent the policy from taking "effect as of the date of issue".[1] Consequently, what took place between September 12th, the date of the medical examination, and September 25th, the date of the delivery of the policy to insured, must relate to his continued insurability and not to the representations in the application. The answers which were true when the application was signed were not altered by what occurred thereafter. Violation of the condition of continued insurability would be the only ground for invalidating this policy, as a representation in order to avoid the policy must not only be material and false, but the applicant must also have known it was false; in other words, it must be fraudulent. *Watson v. Metropolitan Life Insurance Co.,* supra, 145 Pa. Superior Ct. 369, 380, 21 A. 2d, 503.

In *Prudential Insurance Co. of America v. Kudoba et al.,* 323 Pa. 30, at page 35, 186 A. 793, at page 795, it was said: "If an applicant for such insurance is examined by a medical representative of the company, and is 'passed,' and a policy thereupon issues, he is certainly justified in assuming, in the absence of any fraud or

---

[1] The first full premium was paid by insured upon delivery of the policy September 25, 1941.

misrepresentation on his part, that the company has satisfied itself as to his state of health, and that he can rest confident in the belief that he has obtained a valid policy of insurance upon his life. For the company later to be allowed successfully to contend that the policy never became effective because the applicant breached the sound-health clause in that he suffered from disease or bodily impairment when the policy was delivered to him, in a case where the same condition existed when the company examined him, would be to give countenance to a practice that, while perhaps not fairly to be characterized as fraudulent, would be unreasonably destructive of the protection which life insurance is aimed to secure. . . . We conclude, therefore, that the sound-health clause has no application to such diseases as the insured may have had at the time of the medical examination, but that its legal scope must be restricted to mean only that the applicant did not contract any new disease impairing his health nor suffer any material change in his physical condition between the time of such examination and the date of the policy." See, also, *Hatfield et al. v. Sovereign Camp, W.O.W.*, 129 Pa. Superior Ct. 570, 196 A. 904, and Annotation in 136 A.L.R. 1516.

Following the making of the application and the examination by appellant's physician, insured had never been advised by any physician that he was afflicted with any disease or that his health was or had become impaired. In *Barnes v. Fidelity Mutual Life Assn.*, 191 Pa. 618, at pages 622, 623, 43 A. 341, it was said : " . . . the term 'good health' does not mean absolute perfection, but is comparative. The insured need not be entirely free from infirmity or from all the ills to which flesh is heir. If he enjoys such health and strength as to justify the reasonable belief that he is free from derangement of organic functions, or free from symptoms calculated to cause a reasonable apprehension of such derangement, and to ordinary observation and outward appearance his

health is reasonably such that he may with ordinary safety be insured, and upon ordinary terms, the requirement of 'good health' is satisfied. Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. . . . A mere temporary indisposition which does not tend to weaken or undermine the constitution . . . does not render the policy void." See *Prudential Insurance Co. of America v. Adamshick,* 150 Pa. Superior Ct. 222, 27 A. 2d 438; *McBride v. Sun Life Insurance Co. of America,* 90 Pa. Superior Ct. 35, 41.

There was no material change in insured's physical condition between the time of the application and the examination and the delivery of the policy. The testimony was conclusive that there had been no change, and that deceased had no knowledge of any affliction. There was nothing for him to report to appellant. His consultation with a physician, and his examination at a hospital were purely routine and precautionary and gave him no knowledge of the presence of a serious disease or impaired health. "In any event, there was no material change, of which the insured was aware, between the time of the medical examination and the date of the delivery of the policy": *McCrory v. Scranton Life Insurance Co.,* 150 Pa. Superior Ct. 1, at page 6, 27 A. 2d 723, at page 725.

Dr. Stephen Stoffan, a witness called on behalf of appellant, testified: "Q. Therefore, if this condition existed on September 12th at the time he was examined by the insurance physician you would say with regard to Hodgkin's disease there was no change in the status between the time the policy was delivered, which was a couple of weeks later, and the time of the examination that was made on the 12th? A. No, he still had it. . . . Q. One last question: In your opinion; Doctor, this disease existed prior to the time of the diagnosis, final

diagnosis, and with regard to that disease there was or was not any change between the time of the original examination and the diagnosis? A. Oh no. The disease is so slowly progressive that you wouldn't notice any change."

Appellant seems to be in the position of saying that, even though the insured was insurable on September 12, 1941, having successfully passed a medical examination by one of its doctors, on September 25, 1941, the insured was an absolutely uninsurable risk although all the evidence in the case shows that there was no change in his health between the time of the examination and the date the policy was delivered. We can only construe this argument to mean that appellant now asserts that the insured was not insurable on September 12, 1941. But the Act of May 17, 1921, P.L. 682, as amended by the Act of July 19, 1935, P.L. 1319, §1, 40 PS §511a, definitely provides: "In any case where the medical examiner, or physician acting as such, . . . of any insurance company doing business in this State, shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of the company, it shall thereby be estopped from setting up in defense of the action on the policy or certificate issued to the insured, that the insured was not in the condition of health required by the policy or certificate or by the company issuing the same at the time of the medical examination, . . . unless the same was procured by or through the fraud, deceit, or misrepresentation of or on behalf of the insured." See, also, *Albert v. Home Life Insurance Co.*, 140 Pa. Superior Ct. 549, 14 A. 2d 561; *Prudential Insurance Co. of America v. Kudoba et al.*, supra, 323 Pa. 30, 186 A. 793.

Appellant relies upon certain cases which we are convinced have no application. *Boltz v. Metropolitan Life Insurance Co*, 128 Pa. Superior Ct. 147, 193 A. 400, is a case in which the applicant gave false answers in his

application. *Glaser v. Metropolitan Life Insurance Co.,* 139 Pa. Superior Ct. 261, 11 A. 2d 558, likewise involved the failure of an applicant to answer questions submitted to him relative to hospital treatment prior to the date of the application. *Mutual Life Insurance Co. of New York v. Bamford,* 132 Pa. Superior Ct. 255, 200 A. 907, is a case involving the reinstatement of a lapsed policy of insurance; the insured having been to a hospital prior to his examination by the doctor for the insurance company failed to disclose the matters concerning which he was specifically asked in the written and signed application for reinstatement.

Our conclusion is not in conflict with any of the decisions cited by appellant, nor does it conflict with others such as *Germano v. Home Life Insurance Co. of America,* 135 Pa. Superior Ct. 208, 5 A. 2d 449, and *Harkins v. John Hancock Mutual Life Insurance Co.,* supra, 154 Pa. Superior Ct. 387, 35 A. 2d 754; the former involving a material change in physicial condition of applicant, and the latter a fraudulent answer in the application.

We have said that the mutual good faith which is required in a contract of life insurance will not permit a recovery where the insured intentionally withholds or conceals material changes in the condition of his health between the date of his examination by the company's physician and the delivery of the policy, of which the insured has knowledge, and which is of such a nature as to affect his insurability and make him a hazardous risk, and thus amount to a fraud on the company. *Watson v. Metropolitan Life Insurance Co.,* supra, 145 Pa. Superior Ct. 369, 373, 21 A. 2d 503. But in the present case there was no such withholding or concealment; there was in fact no material change in the condition of insured's health between September 11, 1941, the date of the application, and September 12, 1941, the date of the medical examination on the one hand, and September 25, 1941, the date of delivery on the other; there was no violation of the condition of continued insur-

ability. Appellant's motion for judgment notwithstanding the verdict was properly dismissed by the court below, and the judgment entered on the verdict will be affirmed.

Assignments of error are overruled.

Judgment is affirmed.