Sherman, Appellant, *v.* Security Mutual Life Insurance Company of New York.

Argued November 17, 1970; reargued January 11, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Ralph Schwartz,* with him *Schwartz and Cohen,* for appellant.

*Edward W. Madeira, Jr.,* with him *James T. Giles,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 25, 1972:

On July 15, 1965, Irving Sherman applied for life insurance from the Security Mutual Life Insurance Company of New York, the appellee. He felt well and

believed that he was in good health. On July 19, 1965, a physician for the company examined Mr. Sherman and confirmed that he was in good health. On August 24, 1965, between nine and ten a.m., a policy in the amount of $15,000 was delivered to Mr. Sherman at the place of business operated by him and his brother.

The evening of that same day, Irving Sherman complained of feeling nauseated. Since it was his day off, he went to a family physician, Dr. Nemez, for relief. Upon examining Mr. Sherman, Dr. Nemez discovered a mass, said to be "the size of a lemon," in his left mid-abdomen. Two days later x-rays established that Mr. Sherman had a tumor in his colon. The tumor was malignant. Surgery was performed on August 30, 1965, which may have prolonged his life but could not save it. Mr. Sherman died nine months later, on May 17, 1966.

Under the terms of Mr. Sherman's application for insurance: ". . . [A]ny policy issued on this application shall take effect on the date it is delivered to the Owner and the first premium is paid during the lifetime of each and every person proposed for insurance under such policy and then only if the health and other conditions affecting insurability remain as described in this application."

The appellee insurance company, taking the position that there was a material change in Irving Sherman's health between July 15, 1965, when he executed the application for the policy, and August 24, 1965, when the policy was delivered, denied coverage. His widow, the appellant, instituted an assumpsit action to recover the face amount of the policy.

Trial was held before a judge without a jury on August 1, 1968, and the court filed an opinion in which it found that the physical condition of Irving Sherman had changed from July 19, 1965, to August 24, 1965,

and, therefore, that the policy did not take effect on that day or thereafter. The appellant filed exceptions which were considered and argued before the court en banc, which entered an order dismissing the exceptions on April 13, 1970. This appeal followed the entry of judgment for appellee.

At trial, the insured's physician, Dr. Nemez, testified that in his opinion, based on the size of the tumor when first discovered, the insured had been afflicted with the tumor for at least a year prior to August 24, 1965. Nevertheless, the trial court felt bound by what it considered a statutory presumption contained in the Act of May 17, 1921, as amended, P. L. 682, Art. IV, §411a, added 1935, July 19, P. L. 1319, §1, 40 P.S. §511a, which provides as follows:

"§511a. Effect of medical examination and waiver thereof.

"In any case where the medical examiner, or physician acting as such, or the agent of the insurer recording the answers of the applicant where a medical examination is waived, of any insurance company doing business in this State, shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of the company, it shall thereby be estopped from setting up in defense of the action on the policy or certificate issued to the insured, that the insured was not in the condition of health required by the policy or certificate or by the company issuing the same at the time of the medical examination, or the recording of the answers of the applicant where a medical examination is waived, unless the same was procured by or through the fraud, deceit, or misrepresentation of or on behalf of the insured."

In the trial court's opinion, the statute precluded him from going beyond the company's examination,

446

which found no evidence of a malignant condition on July 19, 1965.

The court en banc, quite properly, chose not to consider any such statutory presumption.[1] However, the court en banc,. believing it was only faced with the question of whether the evidence would support the verdict winner, affirmed the verdict of the trial court that the policy was not in effect. The court en banc based its opinion. on the fact that the insured's cancer had reached the terminal stage before the delivery of the policy on August 24, 1965, and that this was not the case on July 15, 1965, even though the cancer was probably also in existence on the earlier date. However, under Pennsylvania law, the continued growth of an already existent tumor from a stage where it is not discovered to a stage where it is discovered is not the type of "material change" in the physical condition of the insured necessary for an insurer to avoid liability under "a good health clause" of a policy issued after the insured has been examined by a medical representative of the insurer.

The reason behind this rule was explained in *Prudential Ins. Co. v. Kudoba*, 323 Pa. 30, 186 Atl. 793 (1936), at pp. 35-36, where we said: "If an applicant for such insurance is examined by a medical representative of the company, and is 'passed,' and a policy thereupon issues, he is certainly justified in assuming, in the absence of any fraud or misrepresentation on his part, that the company has satisfied itself as to his state of health, and that he can rest confident in the belief that he has obtained a valid policy of insurance upon his life. For the company later to be allowed successfully to contend that the policy never became

[1] The Act applies only to the company. It does not bar the beneficiary from showing that the eventually fatal condition was in existence at the time of the examination.

effective because the applicant breached the sound-health clause in that he suffered from disease or bodily impairment when the policy was delivered to him, in a case where the same condition existed when the company examined him, would be to give countenance to a practice that, while perhaps not fairly to be characterized as fraudulent, would be unreasonably destructive of the protection which life insurance is aimed to secure. . . . We conclude, therefore, that the sound-health clause has no application to such diseases as the insured may have had at the time of the medical examination, but that its legal scope must be restricted to mean only that the applicant did not contract any new disease impairing his health nor suffer any material change in his physical condition between the time of such examination and the date of the policy."

In *Minzenberg v. Met. Life Ins. Co.*, 157 Pa. Superior Ct. 557, 43 A. 2d 377 (1945), the Superior Court applied the *Kudoba* principle to facts closely paralleling those in the instant case. The insured "passed" the insurer's medical examination on September 12, 1941. One day later, a routine examination by his family physician uncovered enlarged lymph glands and two days later one gland was removed. Laboratory examination of the removed gland indicated that the insured had Hodgkin's disease. The policy was delivered after the gland was removed, but before the dreaded diagnosis was confirmed. The insurer's attempt to avoid coverage under the policy was refused by the court.

A similar result was reached by the Superior Court in *Davidson v. J. Hancock Mut. Life Ins. Co.*, 159 Pa. Superior Ct. 532, 49 A. 2d 185 (1946). In *Davidson,* the insured "passed" the insurer's medical examination on March 12, 1940. Three days later the insured visited his physician, complaining of a slight cough. After examination, which disclosed that insured "had

a little fever and at the time had pain in his chest, left side, and a post-nasal discharge," the insured was hospitalized and on April 5, 1940, operated upon after a diagnosis of lung cancer. The policy was delivered on March 16, 1940, after the initial examination by the doctor but before the surgery confirmed any diagnosis.

The court en banc attempts to distinguish *Kudoba, Minzenberg* and *Davidson* by emphasizing that in the instant case, the hospital admission records showing that the insured had been having abdominal pains two weeks prior to August 27, 1965, the date of his admission to the hospital, proved that the onset of abdominal pains predated the delivery of the policy and constituted a "material change" in his condition, enabling the insurance company to avoid liability.

These abdominal pains do no more constitute a material change in the insured's condition than does the cough suffered by the insured in *Davidson,* or the discomfort suffered by the insured in *Minzenberg.* If the insurance company were to be able to establish a material change on the basis of such symptoms, the rule in *Kudoba,* designed to provide a consumer with some certainty as to the protection provided by the life insurance would be completely negated. Instead, an insured could never be certain that his life insurance was in effect unless he were examined on the day his policy was delivered.

In support of its opinion, the court en banc relied on the following passage from the opinion of the Superior Court in the case of *Germano v. Home Life Ins. Co.,* 135 Pa. Superior Ct. 208, 213, 5 A. 2d 449 (1939) : "If between the signing of the application and the delivery of the policy the applicant's condition of health suddenly changes, so that the disease that was dormant, quiescent and inactive becomes active, acute and dangerous to life, requiring a major abdominal operation

. . . it does not matter that such change results from the sudden growth and development of a disease which the insured had when he signed the application for insurance but of which he was unaware."

This is not an accurate statement of the law in Pennsylvania, for there is no way such language can be reconciled with our desire, as stated in *Prudential Ins. Co. v. Kudoba, supra,* to allow an applicant for insurance who has "passed" a medical examination administered by a representative of the company, to "rest confident in the belief that he has obtained a valid policy of insurance upon his life."

To achieve such certainty, we will not permit a company to rely on a "good health" clause to deny recovery unless it is established that the insured was aware that he had contracted a new disease or condition between the time of his examination and the delivery of the policy, and failed to disclose this change in his health prior to delivery.

In the words of the New York Court of Appeals, which reached a similar conclusion in *Bronx Savings Bank v. Weigandt,* 1 N.Y. 2d 545, 553, 154 N.Y.S. 2d 878 (1956), at 884: "It would be manifestly unjust to have a policy of life insurance so ambiguous that it would lead a person to believe that he is insured and then seek to rescind it after his life expires on the ground that it is not to be interpreted in a manner in which he might reasonably have interpreted it. He cannot then be placed in a position of *status quo ante.* It is too late then for him to seek other insurance."

Judgment reversed and here entered for appellant.

Mr. Chief Justice JONES concurs in the result.